973 F.2d 321
 Jeffrey RAINEY, Plaintiff-Appellant,
v.
Bob CONERLY, Jr., Defendant-Appellee,
and
Morris Bedsole, Sheriff; James Bowser, Defendants.
Jeffrey RAINEY, Plaintiff-Appellee,
v.
Bob CONERLY, Jr., Defendant-Appellant,
and
Morris Bedsole, Sheriff; James Bowser, Defendants.
 Nos. 91-7248, 91-7249.
 United States Court of Appeals,
Fourth Circuit.
 Argued May 4, 1992.
Decided Aug. 19, 1992.
 
 Richard Edmond Giroux, North Carolina Prisoner Legal Services, Inc., Raleigh, N.C., for plaintiff-appellant.
 Larry James McGlothlin, Fayetteville, N.C. (George Joseph Franks, on the brief), for defendant-appellee.
 Before ERVIN, Chief Judge, HAMILTON, Circuit Judge, and KELLAM, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.
 OPINION
 ERVIN, Chief Judge:
 
 
 1
 Jeffrey Rainey brought this action against Bob Conerly, a prison guard, under 42 U.S.C. § 1983, alleging that Conerly had used excessive force against Rainey while Rainey was a detainee at the Cumberland County Jail in Fayetteville, North Carolina. A jury found against Rainey. Rainey appeals, alleging an error in the jury selection process, an erroneous evidentiary ruling, and improper remarks by the trial judge, in the presence of the jury, regarding Rainey's credibility. Conerly cross-appeals, arguing that the trial court erred by not granting his motions for summary judgment and directed verdict on the basis of the doctrine of qualified immunity. We hold that Conerly was not entitled to summary judgment or directed verdict on the basis of qualified immunity. Furthermore, we find that the district court's failure to question the jurors on a matter requested by Rainey entitles Rainey to a new trial.
 
 I.
 
 2
 On December 3, 1988, Jeffrey Rainey was a pretrial detainee at the Cumberland County Jail in Fayetteville, North Carolina. Rainey was being conducted from his cell block to the prisoner visitation area by prison guard Bob Conerly when a dispute commenced between Conerly and Rainey concerning the extent of Rainey's visitation privileges. Conerly made the decision to abort Rainey's visitation and return Rainey to the cell block.
 
 
 3
 The cell block at the Cumberland County Jail is separated from the corridor to the visitation area by a set of two security doors. The first door, a solid steel frame door with a small viewing window is manually locked and unlocked by the prison guards. Ordinarily, to enter the cell block, a prisoner passes through the steel door into a small vestibule, and the steel door is locked from the outside by a guard. Then an inner barred door is electronically unlocked by use of a switch in the outside corridor. The prisoner may then pass through the inner door into the cell block area. The inner door automatically relocks after it has been opened and closed.
 
 
 4
 In the present case, Conerly passed Rainey through the outer door into the vestibule, relocked the outer door, and electronically unlocked the inner door. At this point in time, Rainey, continuing his dispute with Conerly, refused to proceed into the cell block area, telling Conerly that if he wanted him in the cell block he should come in and put him there himself.
 
 
 5
 Rainey testified that at this point, Conerly lost his temper, opened the outer door, dragged Rainey back into the corridor, and slammed him into the wall three times, causing injuries to Rainey's back. Conerly contended that he was concerned that a large group of prisoners had congregated by the unlocked inner door, which he could not relock without entering the vestibule. He testified that he entered the vestibule with the intention of defusing a volatile situation and only used a necessary degree of force to remove Rainey from the vestibule, merely "falling" against Rainey when they were back in the outer corridor.
 
 
 6
 Rainey was subsequently convicted of the breaking and entering and larceny charges for which he was being detained. He filed the present complaint pro se while he was a prisoner at the Southern Correctional Institution in Troy, North Carolina. The original complaint included claims against Morris Bedsole, Sheriff of Cumberland County, and James Bowser, Chief Jailer of the Cumberland County Jail, for improperly training and supervising Conerly. The district court granted summary judgment in favor of these defendants, and Rainey has not appealed that ruling.
 
 
 7
 Conerly sought summary judgment on the basis of qualified immunity. The district court denied the motion, due to factual disputes in the record, and the case proceeded to trial, commencing July 19, 1991. Conerly made motions for directed verdict, based on qualified immunity, after the close of Rainey's case and again after presenting his defense. Both motions were denied. After deliberating, the jury returned a verdict in favor of Conerly. Rainey appeals, alleging error in the jury selection process, an improper evidentiary ruling, and improper statements by the trial judge. Conerly cross-appeals on the issue of qualified immunity.
 
 II.
 
 8
 Because any alleged errors at trial would be moot if Conerly is correct in his contention that he is protected by qualified immunity, we will consider that issue first. This court has held that the doctrine of qualified immunity is applicable to allegations of excessive use of force. See Slattery v. Rizzo, 939 F.2d 213, 216 (4th Cir.1991). In general, the doctrine of qualified immunity provides that "[g]overnment officials performing discretionary functions are shielded from civil liability to the extent their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " Id. (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). In keeping with this principle, a police officer is entitled to prevail on an assertion of qualified immunity "if a reasonable officer possessing the same information could have believed that his conduct was lawful." Id.; see also Gooden v. Howard County, 954 F.2d 960, 964-65 (4th Cir.1992) (en banc) ("immunity is to be applied with due respect for the perspective of police officers on the scene and not with the greater leisure and acquired wisdom of judicial hindsight").
 
 
 9
 Even in light of this highly deferential standard, we find that the district court properly denied Conerly's motions for the invocation of qualified immunity. Resolution of this case depends entirely on a credibility determination between Rainey and Conerly as to the level of force used by Conerly in removing Rainey from the vestibule, and as such, the issue is inappropriate for resolution by summary judgment.
 
 
 10
 This case is distinguishable from this court's recent decision in Gooden. In Gooden, the en banc court addressed a similar situation in which the applicability of qualified immunity arguably depended on resolution of conflicting versions of the facts. The majority ultimately concluded that resolution of what actually happened was irrelevant to the qualified immunity claim, because the appropriate focus was on the perceptions of the officers. See 954 F.2d at 965-66 ("In the absence of a genuine dispute as to the reasonableness of the officers' perceptions, the issue of qualified immunity is ripe for summary judgment." (emphasis added)). Given the facts as perceived by the officers at the time of the incident, the court in Gooden ruled that there was no basis to dispute a conclusion that the officers could have believed their actions to be lawful. The Gooden court, therefore, reversed the district court, and a panel of this court, both of which had ruled that summary judgment on qualified immunity was inappropriate.
 
 
 11
 Unlike Gooden where what actually happened did not need to be resolved by the trier of fact in order to reach a decision on the applicability of qualified immunity, in this case a determination of what actually happened is absolutely necessary to decide whether Conerly could reasonably have believed that his actions were lawful. Conerly does not claim, as did the officers in Gooden, that he operated under a mistaken, but reasonable, perception of the facts. Instead, the crux of the dispute revolves entirely around the level of force utilized by Conerly in removing Rainey from the vestibule. If Rainey's version of the facts is credited, then Conerly's actions could not, by any reasonable officer, be considered to be within the bounds of the law. Conversely, if Conerly's version is believed, then, not only would qualified immunity be applicable, but Rainey would have no valid claim for use of excessive force. The determination of what actually happened depends exclusively on an assessment of the credibility of the respective witnesses. This assessment is a disputed issue of fact and, therefore, cannot be resolved on summary judgment or directed verdict. Crediting Rainey's version of the facts, as we are required to do in this context, we must find that the district court was correct in declining to grant Conerly's motions.
 
 
 12
 Recognizing that he cannot succeed on summary judgment or directed verdict in the face of conflicting testimony as to what actually happened, Conerly attempts to make an argument analogous to the winning argument in Gooden. He contends that even if Rainey's version of the facts is taken as true, and Conerly did use substantial force in removing Rainey from the vestibule, Conerly's actions were justified by the situation as Conerly perceived it to be. Conerly contends that his actions were motivated by a reasonable concern regarding the potential escape of the other inmates in the cell block which, at minimum, could have led Conerly to believe that the use of substantial force against Rainey was legitimate. At trial, Conerly testified that he feared the other inmates would crowd through the unlocked inner door and kick through the locked outer door--an occurrence he testified he had witnessed on two other occasions.
 
 
 13
 However, Conerly's stated concerns are belied by inconsistencies in his own testimony. If Conerly's true concern was the unlocked status of the inner door, he presumably would have made some effort to relock it when he was in the vestibule. Instead, Conerly removed Rainey from the vestibule, and then, while struggling with Rainey, made a substantial effort to kick closed the outer door--the same door that he stated he feared could be kicked in by escaping prisoners. Clearly, as seen by his actions, Conerly believed the outer door would have been adequate to impede the progress of escaping prisoners. Because Conerly's removal of Rainey from the vestibule did nothing to enhance the security of the cell block, it simply defies logic for Conerly to assert that his concern regarding the security of the cell block was the primary motivating factor for his actions.
 
 
 14
 In sum, we find that Conerly's own testimony discredits his assertion that he perceived that the application of substantial force against Rainey was necessary to maintain the integrity of the cell block security. Based on the undisputed facts, Conerly's asserted concern can be nothing more than a post hoc rationalization. Rejecting this rationalization, we find that resolution of this case depends entirely on a finding of whether Conerly did, in fact, use excessive force against Rainey. This question was properly a question of fact for the jury; thus, the district court was correct to deny the motions for summary judgment and directed verdict on the issue of qualified immunity.
 
 III.
 
 15
 Next, we must consider Rainey's claims of error at trial. First, Rainey contends that it was reversible error for the trial court to refuse to question the members of the jury panel, as Rainey had requested, regarding whether they would tend to credit the testimony of a law enforcement official over that of a prisoner, simply because of their respective positions. This issue is directly controlled by United States v. Evans, 917 F.2d 800 (4th Cir.1990), which held that such a refusal did constitute reversible error. The Evans court found that the trial court's failure to ask such a question denied the appellant "the benefit of a voir dire that will provide essential information so as to allow the intelligent exercise of jury challenges." Id. at 809.
 
 
 16
 The similarities between this case and Evans are striking. In Evans, the wording of the rejected voir dire question was nearly identical to the rejected question in the present case.[1] Further, the Evans court found persuasive the fact that the case boiled down to a credibility determination between the testimony of a police officer and that of the defendants. Similarly, the dispositive issue in this case depends on the evaluation of the conflicting testimony of Rainey and other prisoners against that of Conerly and other police officers. The Evans court also noted that no specific jury instruction was given on the weight that should be accorded to the testimony of law enforcement officials, other than a general credibility instruction. Likewise, in this case, only a general credibility instruction, similar to that in Evans, was given to the jury. Finally, as in Evans, Rainey did not burden the trial court with an overly long list of proposed voir dire questions (coincidentally, in both Evans and this case the appellants submitted exactly 17 proposed questions). In short, the similarities between this case and Evans are so pronounced that there appears to be no way that a principled distinction can be drawn.[2] Accordingly, we hold that, under the law of this circuit, the district court's failure to question the jurors as requested by Rainey entitles Rainey to a new trial.
 
 IV.
 
 17
 While the above analysis is dispositive of the case before us, the interests of judicial economy counsel us to address one other of Rainey's claims that is likely to resurface during the retrial of this case. At the first trial, the district court barred admission into evidence of a contemporaneous account of the incident that Rainey had written while still a prisoner at the Cumberland County Jail. The trial court ruled that the document was not credible because it was dated December 3, 1988, yet purported to describe events that occurred on December 3 through December 5, 1988. The document was notarized on December 13, 1988. The trial court noticed the discrepancy as Rainey began testifying regarding the document on direct examination and ruled, sua sponte, to bar the document from evidence. Rainey attempted to explain that, while he dated the document at the top when he began writing, he continued to transcribe the account over the course of the next several days.
 
 
 18
 We find that exclusion of the document was error. First, the document was listed on the pretrial order. As Rainey argues, the parties are entitled to rely on the representations contained in the pretrial order. Harris v. Marsh, 679 F.Supp. 1204, 1389 (E.D.N.C.1987), aff'd in part and rev'd in part, sub nom. Blue v. United States Dept. of Army, 914 F.2d 525 (4th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 1580, 113 L.Ed.2d 645 (1991). The pretrial order may be modified only "to prevent manifest injustice." Fed.R.Civ.P. 16(e). In this case, there was no argument that admission of the document would have resulted in "manifest injustice." Second, and more importantly, while the trial court may exclude relevant evidence under Federal Rule of Evidence 403 for certain reasons,[3] the basis advanced by the trial court in this case, that the document was "not reliable," is not a proper ground. See United States v. Thompson, 615 F.2d 329, 333 (5th Cir.1980) ("Rule 403 does not permit exclusion of evidence because the judge does not find it credible."). Issues of credibility are to be resolved by the jury, not the trial court, and in this case the jury should have been trusted to accord the evidence the proper weight in light of any date discrepancy.[4] As a result, we hold that it was error for the district court to have excluded Rainey's contemporaneous account of the incident from evidence.
 
 V.
 
 19
 In sum, we affirm the district court's refusal to grant Conerly qualified immunity. We reverse the district court and remand for a new trial because of the district court's failure to question the jury panel concerning whether they would tend to credit the testimony of a law enforcement official over that of a prisoner.
 
 
 20
 REVERSED AND REMANDED.
 
 
 
 [1]
 Rainey requested the following voir dire question: "Simply because of their status, would any member of the jury panel be predisposed to believe the word of a law enforcement officer or prison guard against that of a prisoner?" J.A. at 38
 
 
 [2]
 Conerly suggests that because Evans was a criminal case, "failure to make such inquiry as Plaintiff requested herein is more likely to be an abuse of discretion." Appellee's Br. at 12. Conerly cites no authority for this proposition, and, conversely, this court has stressed that an unbiased jury is no less a concern in civil proceedings than in criminal trials. See, e.g., Haley v. Blue Ridge Transfer Co., 802 F.2d 1532, 1535 (4th Cir.1986) ("It is fundamental that every litigant who is entitled to trial by jury is entitled to an impartial jury, free to the furthest extent practicable from extraneous influences that may subvert the fact-finding process.")
 
 
 [3]
 Fed.R.Evid. 403 states, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."
 
 
 [4]
 We fail to apprehend the reason for the district court's distrust of Rainey's explanation of the creation of the document. We consider it entirely credible that Rainey dated the document when he began writing and added to the account over the course of the next couple of days. The fact that the document was notarized only several days later eliminates any possibility that the account was written significantly later than Rainey claims. Regardless of our opinion on the matter, Conerly remains free to challenge the reliability of the document based on the date discrepancy. Such arguments, however, should be directed to members of the jury, as the final arbiters of the weight that should be accorded to the evidence