**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, v. JOSEPH ANDERSON EVANS, SR., *Defendant-Appellant*. | No. 11-30367 D.C. No 2:10-cr-02121-WFN-1 |

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, v. JOSEPH ANDERSON EVANS, SR., *Defendant-Appellant*. | No. 11-30369 D.C. No. 2:11-cr-02039-WFN-1 OPINION |

Appeal from the United States District Court
for the Eastern District of Washington
Wm. Fremming Nielsen, Senior District Judge, Presiding

Argued and Submitted
February 8, 2013—Seattle, Washington

Filed August 27, 2013

Before: Raymond C. Fisher, Ronald M. Gould,
and Richard A. Paez, Circuit Judges.

Opinion by Judge Paez;
Dissent by Judge Gould

## SUMMARY[*]

### Criminal Law

The panel vacated convictions in two cases in which the defendant's primary defense was that he was a citizen of the United States and his primary evidence in support of his defense was a delayed birth certificate issued by the State of Idaho.

The panel held that the district court erred in invoking an inherent "gate-keeping" authority to exclude the birth certificate pursuant to Fed. R. Evid. 104(a) without relying on some substantive basis outside of Rule 104(a). The panel held that the district court erred by concluding that no reasonable juror could determine that the birth certificate was "substantively genuine" (Fed. R. Evid. 104(b)), and by excluding the birth certificate without first assessing under Fed. R. Evid. 403 its probative value when taken as a true record of the defendant's birth. The panel concluded that the district court's exclusion of the central piece of the defendant's main defense to a critical element of all the charges in the two cases was a violation of his Fifth Amendment right to present a defense, and the error was not harmless.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Dissenting, Judge Gould would affirm because (1) Rule 104(a) lets the court preliminarily review whether a state document in the form of a belated birth certificate was procured by fraud, and illegitimate evidence may be held to be inadmissible due to its inaccurate nature; (2) the district court did not abuse its discretion by excluding the birth certificate under Rule 403; and (3) even if the district court abused its discretion on evidence rulings, he would not elevate this to the level of constitutional error and would conclude that any error was harmless.

## COUNSEL

Stephen R. Hormel (argued), Hormel Law Office, L.L.C., Spokane Valley, Washington, for Defendant-Appellant.

Shawn N. Anderson (argued), Assistant United States Attorney, and Michael C. Ormsby, United States Attorney, Yakima, Washington, for Plaintiff-Appellee.

## OPINION

PAEZ, Circuit Judge:

In these consolidated appeals, we clarify the limits of a trial court's authority under Federal Rules of Evidence 104 and 403 to exclude relevant evidence when the court questions the credibility of such evidence. In two separate cases, the government charged defendant Joseph Anderson Evans, Sr., with being an alien in the United States after deportation, as well as misrepresenting his identity and

citizenship to fraudulently obtain supplemental social security benefits, acquire food stamps, make a claim of citizenship, and apply for a passport. Evans's primary defense to all of the charges was that he was a citizen of the United States, and his primary evidence in support of his defense was a delayed birth certificate issued by the State of Idaho. In a pre-trial ruling, the district court excluded the birth certificate on the ground that it was "substantively fraudulent." The court made this finding following an evidentiary hearing at which the government presented evidence that Evans had obtained the birth certificate by fraudulent misrepresentations and was not a United States citizen. Evans was subsequently convicted of all charges in both cases. We hold that the district court erred in excluding the birth certificate, and that the exclusion of such significant evidence resulted in a violation of Evans's Fifth Amendment due process right to present a defense. We further hold that the error was not harmless, and we therefore vacate Evans's convictions and remand for new trials.

## I. FACTS AND PROCEDURAL HISTORY

In April 2010, Evans filed a petition for a delayed birth certificate in Idaho state district court. *See* Idaho Code Ann. §§ 39-267, 39-278. In support of the petition, Evans filed an affidavit on his own behalf and several affidavits from witnesses who offered evidence of his place of birth. Evans also appeared at a non-adversarial hearing where he answered questions posed by the court. At the close of the hearing, the judge granted Evans's petition and ordered the Idaho Bureau of Vital Records and Health Statistics to issue a delayed birth certificate to Evans. In May 2010, the Bureau issued a birth certificate stating that Evans was born in Lapwai, Idaho, on

the Nez Perce Indian Reservation. Later that month, Evans applied for a United States passport.

As a result of discrepancies in Evans's passport application, the United States Passport Agency in Seattle referred Evans's case to the State Department's Diplomatic Security Service, which began an investigation into Evans's identity. Later that year, in November 2010, Evans was indicted on one count of being an alien in the United States after deportation, in violation of 8 U.S.C. § 1326. A few months later, in February 2011, he was again indicted, this time on 42 counts of fraudulently obtaining supplemental social security benefits, unlawfully acquiring food stamps, making a false claim of citizenship, and making a false statement in an application for a passport, in violation of 42 U.S.C. § 1383a(a)(3), 7 U.S.C. § 2024(b), and 18 U.S.C. §§ 911, 1542. The basis for the fraud and false statements alleged in the latter indictment were Evans's alleged misrepresentations of his identity and citizenship.

The two cases were assigned to the same district court judge. Before trial commenced on the § 1326 charge, Evans notified the court that he intended to introduce his delayed birth certificate issued by the State of Idaho as proof of his United States citizenship. The birth certificate was a key piece of evidence in both cases, because to convict Evans on any of the counts, the government had to prove beyond a reasonable doubt that he was not a United States citizen. At a pre-trial conference, the court questioned the admissibility of the birth certificate. The court expressed concern about inconsistencies in the evidence, including inconsistent information about Evans's real name and place of birth. The district judge explained to the parties:

> I received a lot of documents on [sic] this case. There are a lot of motions filed. And all the documents that I've reviewed in the last half a day or so cause me some real concern about going forward with this case at this time. Without discussing at all the admissibility of any of these documents, on their face, just reading them, there is so much inconsistent information about this person, whether his name is Evans or whether it's Shippentower or whether it's Ceniceros-Mora. . . .

> What really concerns the court is that, without making a finding on this, there's enough evidence to indicate that going forward could possibly result in fraudulent evidence coming into this case in front of the jury.

The court reasoned that if the Idaho court had relied on inaccurate or false information to find that Evans was born in Idaho and grant the petition for a delayed birth certificate, the birth certificate itself would be inaccurate, and it would therefore be error to admit it. The court concluded that it should hold an evidentiary hearing under Federal Rule of Evidence 104 to determine if the birth certificate was admissible.[1] Prior to the hearing, the government filed a pre-trial Motion to Preclude Admission of Evidence of Birth in Idaho ("Motion to Preclude Evidence").

---

[1] Evans objected to the hearing. He argued that the birth certificate was admissible as a certified document of Idaho Vital Records, and that the only remaining issue was the weight to be accorded to the birth certificate, which was a question for the jury.

At the Rule 104 hearing, the government called three witnesses.[2] First, a special agent from Immigration and Customs Enforcement testified about his investigation of Evans's immigration and criminal history. He testified that the State Department's Diplomatic Security Service, which investigates visa fraud, asked him to review the A-file (i.e. the immigration file, or "alien registration file") of a person named "Ramon Ceniceros-Mora." The A-file included, *inter alia*, two documents titled "record of deportable alien," a copy of a sworn statement made to a Border Patrol officer, a 1984 federal judgment of conviction for possession of a false birth certificate, and a 1990 federal judgment of conviction for a violation of 8 U.S.C. § 1326.[3] The agent testified that he matched Evans to the file of "Ramon Ceniceros-Mora" through fingerprint analysis, photographs, witness interviews, investigation into Evans's application for a delayed birth certificate, and review of Evans's correspondence with the Idaho Bureau of Vital Statistics. On the basis of the records in the A-file, the agent testified that he believed Evans was a native and citizen of Mexico.

The government's second witness was a special agent from the State Department's Diplomatic Security Service. He testified that Evans had submitted an application for a United States passport that contained "fraudulent indicators." He and several other agents subsequently visited Evans at his

---

[2] Evans did not testify or call any witnesses at the hearing. He instead renewed his objection to the hearing, arguing that the court could not invade the province of the jury by assessing the credibility of the evidence he sought to admit.

[3] The government also presented the court with various documents from this A-file as exhibits to its Motion to Preclude Evidence.

home to investigate possible visa fraud. During the visit, Evans identified photos of himself that the special agent had taken from the A-file. When the agent told Evans that the photographs were from the file of a person who had been previously deported to Mexico, however, Evans denied being a citizen of Mexico or having ever been deported. The agent also took Evans's fingerprints and matched them to other documents in the A-file.

Finally, the government's third witness was a historian for the United States Marine Corps. She testified that she could find no record of Evans's alleged military service, did not recognize the type of certificate allegedly showing Evans's graduation from training, and thought his military style of dress in photographs was very unusual.

On the basis of the testimony and other evidence presented at the evidentiary hearing, the district court granted the government's Motion to Preclude Evidence.[4] The court cited Federal Rules of Evidence 104(a) and 403 as the bases for its decision, explaining:

> While neither party questions the validity of the Idaho birth certificate on its face, the Government has unequivocally shown that the Idaho birth certificate is substantively fraudulent and that it was obtained through fraud of the Defendant. The Court finds that all three of the Government's witnesses were credible and that there is no support in the record that would allow a reasonable person

---

[4] Although the district court's order referenced "the § 1326 offense," the ruling applied to both cases.

to determine that the Defendant's Idaho birth certificate is substantively genuine.

As a gatekeeper, the Court is obligated to exclude the Idaho birth certificate under Fed. R. Evid. 104 ("[p]reliminary questions concerning . . . the admissibility of evidence shall be determined by the court"). Under Fed. R. Evid. 403, the Idaho birth certificate is without probative weight, can only lead to undue delay and a possible miscarriage of justice.

Furthermore, excluding the Idaho birth certificate does not, as defense counsel contends, deprive Defendant of his Sixth Amendment Jury trial rights. The Court is not making a determination of Defendant's citizenship, but merely a determination of the admissibility of the Idaho birth certificate. Alienage is an essential element of the § 1326 offense and the Government is still required to carry its burden with respect to that element just as it must with the other elements.

(citation omitted).

The two cases proceeded to trial, with the court beginning with the trial of the § 1326 charge. During jury deliberations on that charge, the jury sent the district court a note asking, "if you are deported are you legally considered an alien?" The court responded that the answer was contained within the jury instructions. When the jury could not reach a unanimous verdict, the court declared a mistrial. At the re-trial of the

§ 1326 charge, Evans's primary defense was that he was a United States citizen, and his primary evidence in support of that defense was his own testimony. Both of the special agents from the Rule 104(a) hearing testified again at the re-trial. This time, the jury returned a verdict of guilty.

At the trial on the fraud and false statements charges, Evans again argued that he was a United States citizen. All three of the government's witnesses from the Rule 104(a) hearing testified at this trial, and the jury convicted Evans.

Evans timely appealed the judgments of convictions in both cases. On appeal, Evans argues that the exclusion of the birth certificate deprived him of his Fifth Amendment due process right to present a defense and his Sixth Amendment right for a jury to determine every element of the charges brought against him.

## II. STANDARD OF REVIEW

We review de novo the district court's interpretation of the Federal Rules of Evidence, *United States v. W.R. Grace*, 504 F.3d 745, 758–59 (9th Cir. 2007), but we review the district court's exclusion of evidence for abuse of discretion, *United States v. Lynch*, 437 F.3d 902, 913 (9th Cir. 2006) (en banc). "We review de novo whether an evidentiary error rises to the level of a constitutional violation." *United States v. Pineda-Doval*, 614 F.3d 1019, 1032 (9th Cir. 2010). A constitutional error is harmless if "it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *United States v. Walters*, 309 F.3d 589, 593 (9th Cir. 2002) (internal quotation marks omitted).

## III. DISCUSSION

The Constitution "guarantees criminal defendants a meaningful opportunity to present a complete defense." *United States v. Stever*, 603 F.3d 747, 755 (9th Cir. 2010) (internal quotation marks omitted). This right includes "the right to present the defendant's version of the facts," *Washington v. Texas*, 388 U.S. 14, 19 (1967), and to "put before a jury evidence that might influence the determination of guilt," *Pennsylvania v. Ritchie*, 480 U.S. 39, 56 (1987); *see also Chambers v. Mississippi*, 410 U.S. 284, 294 (1973) ("The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations."). We have acknowledged that this right is not "absolute," *Alcala v. Woodford*, 334 F.3d 862, 877 (9th Cir. 2003), since the "adversary process could not function effectively without adherence to rules of procedure that govern the orderly presentation of facts and arguments," *Taylor v. Illinois*, 484 U.S. 400, 410–11 (1988). However, "'when evidence is excluded on the basis of an *improper* application of the evidentiary rules,'" the danger of a due process violation is particularly great, since "'the exclusion [of the evidence] is unsupported by any legitimate . . . justification.'" *Stever*, 603 F.3d at 755 (brackets omitted) (quoting *United States v. Lopez-Alvarez*, 970 F.2d 583, 588 (9th Cir. 1992)). We therefore begin our analysis by considering whether the district court properly applied the Federal Rules of Evidence. We conclude that it did not.

### A.

The district court invoked Rule 104(a) as the source of its "gate-keeping" authority. Rule 104(a) states that the court "must decide any preliminary question" of fact or law about

three types of issues:  whether (1) "a witness is qualified," (2) "a privilege exists," or (3) "evidence is admissible."  Fed. R. Evid. 104(a); *see also* Fed. R. Evid. 104(a) advisory committee notes.[5]  We have previously considered the trial court's gate-keeping function as it applies to the first two issues, but we have not explicitly considered the scope of the trial court's gate-keeping function with regard to the third issue.[6]  We conclude that the trial court's authority to determine if evidence is admissible pursuant to Rule 104(a) is necessarily limited by other rules of evidence—most importantly, Rule 402, which provides that evidence is admissible so long as (1) it is relevant, and (2) it is not

---

[5] "The court must decide any preliminary question about whether a witness is qualified, a privilege exists, or evidence is admissible. In so deciding, the court is not bound by evidence rules, except those on privilege." Fed. R. Evid. 104(a).  The advisory committee notes specify that the judge may "act as a trier of fact" and may also evaluate evidence "in terms of a legally set standard."  Fed. R. Evid. 104(a) advisory committee notes.

[6] This circuit's case law is particularly well-developed with regard to a trial court's Rule 104(a) authority to decide "whether a witness is qualified," an issue that the Supreme Court addressed in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). *See, e.g.*, *Avila v. Willits Envtl. Remediation Trust*, 633 F.3d 828, 833–34 (9th Cir.), *cert. denied*, 132 S. Ct. 120 (2011); *United States v. Hermanek*, 289 F.3d 1076, 1093 (9th Cir. 2002); *United States v. Alatorre*, 222 F.3d 1098, 1100–03 (9th Cir. 2000); *United States v. Hankey*, 203 F.3d 1160, 1167–70 (9th Cir. 2000); *United States v. Cordoba*, 194 F.3d 1053, 1056–57 (9th Cir. 1999); *Hopkins v. Dow Corning Corp.*, 33 F.3d 1116, 1123–24 (9th Cir. 1994); *United States v. Rincon*, 28 F.3d 921, 923 (9th Cir. 1994); *United States v. Amador-Galvan*, 9 F.3d 1414, 1417–18 (9th Cir. 1993). We have also considered the trial court's authority under Rule 104(a) to determine whether "a privilege exists." *United States v. de la Jara*, 973 F.2d 746, 748–49 (9th Cir. 1992). *Cf. United States v. Zolin*, 491 U.S. 554, 565–68 (1989).

otherwise inadmissible under, *inter alia*, the Federal Rules of Evidence.    Fed. R. Evid. 402 ("Relevant evidence is admissible unless any of the following provides otherwise: the United States Constitution; a federal statute; these rules; or other rules prescribed by the Supreme Court.  Irrelevant evidence is not admissible.").

Thus, Rule 104(a) provides the trial court with the authority to decide questions that might make evidence inadmissible under some *other* rule of evidence (or under the Constitution, a federal statute, or other Supreme Court rules), but it does not itself provide a substantive basis for excluding the evidence.  *See United States v. Brewer*, 947 F.2d 404, 409 (9th Cir. 1991) ("Rule 104 . . . is limited to the preliminary requirements or conditions that must be proved before a particular rule of evidence may be applied.").  For example, trial courts can exercise their authority under Rule 104(a) to determine that a statement was made for the purposes of medical diagnosis, making it admissible under Rule 803(4), *see United States v. Lukashov*, 694 F.3d 1107, 1115 (9th Cir. 2012), *cert. denied*, 133 S. Ct. 1744 (2013); that a conspiracy existed, making certain co-conspirator statements admissible under Rule 801(d)(2)(E), *see Bourjaily v. United States*, 483 U.S. 171, 175 (1987); and that an agency relationship existed, making certain statements admissible under Rule 802(d)(2)(D), *see Hilao v. Estate of Marcos*, 103 F.3d 767, 775–76 (9th Cir. 1996).  A trial court may also exercise its Rule 104(a) authority to determine, *inter alia*, "the unavailability of a witness whose former testimony is being offered" or whether there is "proof of the interest of the declarant in determining whether the out-of-court statement threatens that interest."  *Brewer*, 947 F.2d at 409.

In each of the above scenarios, the trial court uses its Rule 104(a) authority to determine "the existence of a condition," which in turn determines "[t]he applicability of a particular rule of evidence." Fed. R. Evid. 104(a) advisory committee notes. We have not previously considered whether a trial court can exclude evidence pursuant to Rule 104(a) without relying on some substantive basis outside of Rule 104(a), such as another rule of evidence, a federal statute, or the United States Constitution. We now hold that it cannot.[7] *See* Fed. R. Evid. 402. To the extent that the district court here invoked an umbrella "gate-keeping" authority to exclude Evans's birth certificate so as to avoid a "miscarriage of justice," it exceeded the scope of its authority under Rule 104(a).[8]

---

[7] The dissent reads Rule 104(a) as giving trial courts the authority to exclude "illegitimate evidence" without relying on any other rule of evidence or federal law. Dissent at 28. But Rule 104(a) does not give the court the authority to exclude "illegitimate evidence." It gives the court the authority to "decide any preliminary question about whether . . . evidence is *admissible*." Fed R. Evid. 104(a) (emphasis added). And the word "admissible," unlike the word "illegitimate" carries with it the meaning—and limitations—proscribed elsewhere in the rules of evidence. *See, e.g.*, Fed. R. Evid. 402 ("Relevant evidence *is admissible* unless any of the following provides otherwise . . ." (emphasis added)); *see also* Fed. R. Evid. 402 advisory committee notes ("The provisions that all relevant evidence is admissible, with certain exceptions, and that evidence which is not relevant is not admissible are a presupposition involved in the very conception of a rational system of evidence. They constitute the foundation upon which the structure of admission and exclusion rests." (internal quotation marks and citation omitted)).

[8] We note that unlike the district court's other stated reason for excluding Evans's birth certificate, "undue delay," the danger of a "miscarriage of justice" is not one of the grounds upon which a trial court can exclude evidence pursuant to Rule 403. Thus, we disagree with the dissent's conclusion that it is "unnecessary" to discuss the trial court's

B.

Because the trial court must admit evidence that is (1) relevant, and (2) not inadmissible under, *inter alia*, some other rule, Fed. R. Evid. 402, we next consider whether these conditions are met here.  The government argues that the birth certificate is irrelevant because even if it was "genuine in form," it was "not [genuine] in substance."  We disagree.  The fact that the birth certificate was properly issued by the State of Idaho establishes that it is "of consequence" to an issue in both cases—Evans's claim of United States citizenship—and that it has some "tendency to make [his alleged citizenship] more . . . probable than it would be without the evidence."  Fed. R. Evid. 401.[9]  This establishes that the birth certificate was relevant to all the counts in both cases.

Furthermore, to the extent the district court conditioned the relevance of the birth certificate upon its "substantive genuineness," it erred in its application of Rule 104(b).  This rule provides that where "the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist."  Fed. R. Evid.

---

application of Rule 104(a) separately from its application of Rule 403. *See* Dissent at 32 n.2.

[9] "Evidence is relevant if:  (a) it has *any* tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Fed. R. Evid. 401 (emphasis added).

104(b).**[10]**  If "the foundation evidence is sufficient to support a finding of fulfillment of the condition . . . the item is admitted."  Fed. R. Evid. 104(b) advisory committee notes. Furthermore, if "after all the evidence on the issue is in, pro and con, the jury *could* reasonably conclude that fulfillment of the condition is not established," the evidence is admitted, because "the issue is for [the jury]."  *Id.* (emphasis added). Only if "the evidence is not such as to allow a finding, [does] the judge withdraw[] the matter from [the jury's] consideration."  *Id.*  Of critical importance here, when "determining whether the [party introducing evidence] has introduced sufficient evidence to meet Rule 104(b), *the trial court neither weighs credibility* nor makes a finding that the [party] has proved the conditional fact by a preponderance of the evidence."  *Huddleston v. United States*, 485 U.S. 681, 690 (1988) (emphasis added).  "The court simply examines all the evidence in the case and decides whether the jury could reasonably find the conditional fact . . . by a preponderance of the evidence."  *Id.*

Here, although the district court did not specifically cite to Rule 104(b), its conclusion that no "reasonable person" could "determine that the Defendant's Idaho birth certificate is substantively genuine" draws its language and reasoning from Rule 104(b).  But in reaching the conclusion that no reasonable person could find that Evans's birth certificate was substantively genuine, the district court erroneously weighed

---

**[10]** A trial court may, for example, condition the admission of evidence on proof that events occurred in a particular location, *United States v. Matta-Ballesteros*, 71 F.3d 754, 767–68 (9th Cir. 1995), *as amended*, 98 F.3d 1100 (9th Cir. 1996); that a particular party was the author of a document, *United States v. Gil*, 58 F.3d 1414, 1419 (9th Cir. 1995); or that a party relied on the advice of a third party, *Aceves v. Allstate Ins. Co.*, 68 F.3d 1160, 1166 (9th Cir. 1995).

the credibility of the government's witnesses against the credibility of the official state document.  Indeed, it expressly found that "all three of the Government's witnesses were credible."  This was error.  The fact that the birth certificate was an official document, issued by the Idaho Bureau of Vital Records and Health Statistics, provided a sufficient basis upon which a juror *could* conclude that the birth certificate was "substantively genuine."     And to the extent the Government's evidence suggests otherwise, the issue boils down to the credibility of the parties' conflicting evidence, which is a question for the jury to decide.[11]  We therefore hold that to the extent the district court relied on Rule 104(b) in excluding the birth certificate, it erred.

## C.

We next turn to the district court's application of Rule 403.  As part of its authority to decide preliminary questions of law pursuant to Rule 104(a), the trial court may exclude relevant evidence if "its probative value is substantially outweighed" by, *inter alia*, the danger of unfair prejudice, misleading the jury, or undue delay.[12]  Fed. R. Evid. 403; *see*

---

[11] The dissent argues that "the district court cannot be said to have made a credibility determination when Evans presented no evidence at the hearing to support the document's integrity."  Dissent at 29.  We disagree.  The district court weighed the credibility of the defendant's evidence, i.e. the state-issued birth certificate, against the credibility of the government's evidence, i.e. the witness testimony presented at the Rule 104 hearing.

[12] "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.

*also Hankey*, 203 F.3d at 1168 (recognizing that the court's Rule 104(a) authority allows it to exclude evidence under Rule 403).  The district court here concluded that Evans's birth certificate was inadmissible under Rule 403 because it was "without probative weight" and could "only lead to undue delay."  This was legal error.  "Weighing probative value against unfair prejudice under [Rule] 403 means probative value with respect to a material fact *if the evidence is believed*, not the degree the court finds it believable." *Bowden v. McKenna*, 600 F.2d 282, 284–85 (1st Cir. 1979) (citing 22 C. Wright & K. Graham, Federal Practice & Procedure: Evidence, § 5214, at 265–66 (1978)) (emphasis added).  The court may not exclude relevant evidence—or, in this case, assign it no probative value—on the ground that it does not find the evidence to be credible.  *See United States v. Candoli*, 870 F.2d 496, 509 (9th Cir. 1989) ("[A] conflict in the evidence goes to the weight of [the evidence], not to its admissibility.").

We find three cases from our sister circuits to be instructive.  First, in *Blake v. Pellegrino*, the district court granted the defendant's motion to strike the cause of death from the plaintiff's death certificate, explaining that it did not believe the plaintiff had died in the manner so described. 329 F.3d 43, 45 (1st Cir. 2003).  The First Circuit held that this was error.  *Id.* at 49.  The court concluded that "a judge, presiding over a jury trial, may [not] rule on the admissibility of evidence based upon his view of the persuasiveness of that evidence," since the jury, not the judge, was "the ultimate arbiter of the persuasiveness of the proof." *Id.* at 47 (internal quotation marks omitted).  The court considered and rejected the possibility that the trial court had acted pursuant to its authority under Rule 104(a):

Rule 104(a) is inapposite here, for no foundational facts were in issue. Virtually by definition, foundational facts are those facts upon which the admissibility of evidence rests. Those facts include matters such as the genuineness of a document or statement, the maker's personal knowledge, and the like. *In this instance, those facts (e.g., the authenticity of the death certificate and the authority of the medical examiner to sign it) were never in dispute. The district court's problem did not go to any foundational fact, but, rather, to the very core of the evidence: its persuasiveness.* Where, as here, a piece of evidence rests upon a proper foundation, Rule 104(a) does not permit a trial judge to usurp the jury's function and exclude the evidence based on the judge's determination that it lacks persuasive force.

*Id.* at 48 (emphasis added) (citations omitted). We are persuaded by the court's reasoning. The district court here, as in *Blake*, did not dispute that Evans's birth certificate was properly issued by the State of Idaho, making it facially valid. Rather, the court questioned whether the event that the certificate allegedly documented—in *Blake*, the decedent's alleged death by asphyxia; here, Evans's alleged birth in Idaho—had actually occurred in the way stated on the certificate. We agree with the First Circuit that this is a question of fact that should be decided by a jury, not a trial judge. We therefore adopt the First Circuit's rule that "a trial judge [may not] refuse to admit evidence simply because he does not believe the truth of the proposition that the evidence asserts." *Id.* at 47.

We find further support for adopting the First Circuit's rule in *Ballou v. Henri Studios, Inc.*, 656 F.2d 1147 (5th Cir. 1981). In *Ballou*, the plaintiffs filed a motion to exclude a blood alcohol test indicating that the decedent was intoxicated at the time of his car accident with the defendant. *Id.* at 1149. The trial court held a pre-trial hearing at which several witnesses testified; it then granted the motion, explaining that the test lacked "credibility" in light of certain witness testimony. *Id.* at 1151–52. The Fifth Circuit reversed, concluding that "the court's decision to believe Mrs. Eisenhower's testimony rather than the results of the blood alcohol test constituted a credibility choice which should properly have been reserved for the jury." *Id.* at 1154. The court went on to explain that the district court had mis-applied the Rule 403 balancing test by assigning "little or no probative value" to the test results when it excluded them:

> Rather than discounting the probative value of the test results on the basis of its perception of the degree to which the evidence was worthy of belief, the district court should have determined the probative value of the test results if true, and weighed that probative value against the danger of unfair prejudice, leaving to the jury the difficult choice of whether to credit the evidence.

*Id.*; *see also id.* ("Rule 403 does not permit exclusion of evidence because the judge does not find it credible." (internal quotation marks omitted)). The district court here, like the trial court in *Ballou*, erred by assigning no probative weight to the birth certificate. It should have determined the probative value of the birth certificate *if taken as a true*

*record of Evans's birth*, and then weighed it against the other Rule 403 factors.

Finally, we find additional guidance in the Fourth Circuit's decision in *Rainey v. Conerly*, 973 F.2d 321 (4th Cir. 1992). In *Rainey*, the trial court *sua sponte* excluded a prisoner's contemporaneous written account of an altercation with a prison guard "because it was dated December 3, 1988, yet purported to describe events that occurred on December 3 through December 5, 1988," and therefore was "not reliable." *Id.* at 326. The Fourth Circuit held that this was error. The court concluded:

> [W]hile the trial court may exclude relevant evidence under Federal Rule of Evidence 403 for certain reasons, the basis advanced by the trial court in this case, that the document was 'not reliable,' is not a proper ground. Issues of credibility are to be resolved by the jury, not the trial court, and in this case the jury should have been trusted to accord the evidence the proper weight in light of any date discrepancy.

*Id.* (citation and footnote omitted). Here, as in *Rainey*, the trial court relied in part on an improper ground for excluding the birth certificate under Rule 403, i.e. the danger of a "miscarriage of justice." This was error. It should have instead trusted the jury to consider discrepancies between the information contained in the birth certificate and the

government's evidence and accord the proper weight to each.[13]

### D.

The final question, with respect to the district court's evidentiary rulings, is whether the probative value of the birth certificate—if found credible by the jury—is substantially outweighed by the potential for undue delay, or any other factor in the Rule 403 balancing test. We conclude that it is not. The birth certificate's probative value, if found to be a credible record of Evans's birth, is very high: every charge

---

[13] Several other circuits, as well as several legal commentators, have reached similar conclusions. *See In re Air Disaster at Lockerbie Scotland on Dec. 21, 1988*, 37 F.3d 804, 839 (2d Cir. 1994) (Van Graafeiland, J., dissenting) ("Credibility and believability are for the jury, not the judge."), *abrogated in part on other grounds by Zicherman v. Korean Air Lines Co.*, 516 U.S. 217 (1996); *W. Indus., Inc. v. Newcor Canada Ltd.*, 739 F.2d 1198, 1202 (7th Cir. 1984) ("[A] judge in our system does not have the right to prevent evidence from getting to the jury merely because he does not think it deserves to be given much weight."); 22A Kenneth W. Graham, Jr., Federal Practice and Procedure § 5214 (2d ed. 2013) ("[I]t seems relatively clear that in the weighing process under Rule 403 the judge cannot consider the credibility of witnesses. In the first place, credibility is a question for the jury; to permit the judge to exclude evidence on the ground that he thinks it incredible would be a remarkable innovation and may even be a violation of the right of trial by jury. . . . Rule 403 presupposes that the judge can determine the admissibility by assessing logical inferences at the time it is offered. If the judge were supposed to assess credibility as well it is difficult to see how this could be done without first hearing nearly the entire trial." (footnotes omitted)); Edward J. Imwinkelried, *The Meaning of Probative Value and Prejudice in Federal Rule of Evidence 403: Can Rule 403 Be Used to Resurrect the Common Law of Evidence?*, 41 Vand. L. Rev. 879, 886 (1988) ("Leading law review commentators and treatise writers have concluded that a judge may not consider the credibility of the source of the evidence in gauging probative value under rule 403." (footnotes omitted)).

in the two indictments required the government to prove that Evans was either an alien or not a citizen of the United States, his main defense at both trials was that he was a United States citizen, and the birth certificate was his primary evidence of citizenship. *See United States v. Wiggan*, 700 F.3d 1204, 1213 (9th Cir. 2012) ("[A] decision regarding probative value must be influenced by the availability of other sources of evidence on the point in question."). Furthermore, the danger of "undue delay"—the only proper Rule 403 factor that the district court cited—was low, especially since the government's witnesses from the Rule 104(a) pre-trial hearing testified again at both of the trials. Although the government argues that it would have had to "conduct a separate presentation during rebuttal, following the Defendant's offering [the birth certificate] in his case-in-chief," such a burden does not rise to the level of an "undue delay" in this case, nor does it outweigh the probative value of the birth certificate to the central issue in both cases.

The government also argues that three additional Rule 403 factors—unfair prejudice to the government, confusion of the issues, and misleading the jury—substantially outweigh the probative value of the birth certificate. We disagree.[14] If the birth certificate had been admitted, the government could have put forth evidence that it was fraudulently obtained by Evans, as it did at the Rule 104(a) hearing; it could have also introduced evidence detailing the procedures for obtaining a delayed certificate of birth in Idaho. *See Mah Toi v. Brownell*, 219 F.2d 642, 644 (9th Cir. 1955) (concluding that

---

[14] The government does not cite to the remaining Rule 403, factors, "wasting time" and "needlessly presenting cumulative evidence." In any case, these two factors carry minimal weight in the Rule 403 balancing test here for the same reason as "undue delay."

the "general" rule is that "'[o]fficial (birth) certificates are prima facie, but not conclusive, evidence of the facts stated therein'" (quoting 32 C.J.S. Evidence § 766(b))). We fail to see how such an approach would have been prejudicial to the government. To alleviate any concern that the jury might give undue weight to a single item of evidence, the court could have given a cautionary instruction. *See United States v. Boulware*, 384 F.3d 794, 808 (9th Cir. 2004) ("Any danger that the jury would have given undue weight to the [evidence] could have been dealt with by a cautionary instruction.").

Admission of the birth certificate also would have posed a low risk of confusing or misleading the jury. Although the birth certificate would have increased the chances that the jury would acquit Evans, such a result could not be attributed to the jury being confused or misled; to find otherwise would be to pre-judge the "correct" outcome of the trial before it occurs. *See, e.g.*, *United States v. Crosby*, 75 F.3d 1343, 1349 (9th Cir. 1996) ("'[I]f the evidence [that someone else committed the crime] is in truth calculated to cause the jury to doubt, the court should not attempt to decide for the jury that this doubt is purely speculative and fantastic but should afford the accused every opportunity to create that doubt.'" (quoting 1A John Henry Wigmore, Evidence in Trials at Common Law § 139 (Tillers rev. ed. 1983)) (alterations in original)). It is the jury, not the trial judge, that must decide how much weight to give to Evans's delayed birth certificate in light of the government's evidence suggesting that the birth certificate is fraudulent and that Evans is not a United States citizen. We therefore conclude that it was an abuse of discretion for the district court to exclude Evans's delayed birth certificate under Rule 403.

E.

We next consider whether the exclusion of the birth certificate rose to the level of a constitutional violation. We hold that it did.[15] "The Ninth Circuit has found . . . violations [of the constitutional right to present a defense] where the district court incorrectly excluded evidence that was necessary for the defendant to refute a critical element of the prosecution's case." *Pineda-Doval*, 614 F.3d at 1033. Thus, in *Pineda-Doval*, we held that it was constitutional error to exclude evidence of particular Border Patrol policies where the "only real factual dispute . . . was whether [the defendant's] driving caused the ten charged deaths," *id.* at 1032, evidence of the policies "went to the question of whether [the agent's] conduct constituted a superseding cause of the accident," *id.*, and exclusion of the evidence "effectively denied the defendant the only argument that he had," *id.* at 1033.

Likewise, in *Stever*, we held that it was constitutional error to exclude "the sole evidence" tending to show that a drug trafficking organization may have trespassed on the defendant's land, where "a major part of the attempted defense" was that the defendant was not involved in growing the marijuana discovered on his land. 603 F.3d at 757

---

[15] Because we find that the exclusion of the birth certificate was a violation of Evans's Fifth Amendment right to present a defense, we do not address his additional argument that it was a violation of his Sixth Amendment right to have a jury determine the elements of the charges brought against him.

(internal quotations marks omitted).[16]  Here, as in *Stever*, the excluded birth certificate was (1) the main piece of evidence, (2) for the defendant's main defense, to (3) a critical element of the government's case.  On this ground, we conclude that the exclusion of the birth certificate amounted to a deprivation of Evans's due process right to present a defense. *See United States v. Ramirez*, 714 F.3d 1134, 1139 (9th Cir. 2013) ("To be sure, the Constitution protects a criminal defendant's right to argue a point that goes to the heart of his defense.").

Having found a violation of the right to present a defense, "we must reverse the guilty verdict unless the government convinces us the error was harmless beyond a reasonable doubt." *United States v. Leal-Del Carmen*, 697 F.3d 964, 975 (9th Cir. 2012).  The government has not met this high burden.  Its sole argument is that any error was harmless "given the overwhelming volume and substance of the government's evidence in support of the Defendant's alienage."  But we are not persuaded beyond a reasonable doubt that the jury would have believed this evidence rather than believing that Evans was a United States citizen, as suggested by his state-issued birth certificate.  The question of Evans's alienage or citizenship was "at the very heart" of the two cases, and his birth certificate was "the most important evidence that the defense could present on that topic."  *Wiggan*, 700 F.3d at 1215 (holding that it was an

---

[16] *See also Boulware*, 384 F.3d at 808 (finding a due process violation where "the state-court judgment [that had been excluded] was crucial to Boulware's defense on the tax counts, and the judgment directly contradicted the government's theory of the case"); *United States v. Whitman*, 771 F.2d 1348, 1351 (9th Cir. 1985) (finding a due process violation where the district court did not allow the defendant to rebut the government's evidence of motive).

abuse of discretion, and not harmless, to admit grand juror testimony).  We do not know the effect that the birth certificate would have had on the outcome of the trial, including whether it would have affected the jurors' assessment of Evans's own testimony or the testimony of any other witnesses.  Indeed, the first jury to hear Evans's § 1326 case could not reach a verdict, resulting in a mistrial.  We also find it significant that Evans exercised his right not to testify in the case that resulted in a mistrial; we decline to speculate on whether he would have exercised this right in the subsequent two trials—or otherwise changed his trial strategy—had the birth certificate been admitted.  We are therefore not convinced beyond a reasonable doubt that the exclusion of the birth certificate was harmless.

## IV. CONCLUSION

We conclude that the district court erred in invoking an inherent "gate-keeping" authority to exclude the birth certificate pursuant to Rule 104(a) without relying on some substantive basis outside of Rule 104(a).  The court further erred by concluding that no reasonable juror could determine that the birth certificate was "substantively genuine," *see* Fed. R. Evid. 104(b), and by excluding the birth certificate pursuant to Rule 403 without first assessing its probative value when taken as a true record of Evans's birth.  Furthermore, the district court's exclusion of the central piece of evidence for Evans's main defense to a critical element of all the charges in the two cases was a violation of Evans's Fifth Amendment right to present a defense, and the error was not harmless.

For all of the above reasons, we vacate the conviction in No. 11-30367 and all the convictions in No. 11-30369 and remand for a retrial of all charges in both cases.

**VACATED AND REMANDED.**

GOULD, Circuit Judge, dissenting:

I take a different view and would affirm the district court for three reasons.

First, Federal Rule of Evidence 104(a) literally permits a district court to perform a threshold review of the admissibility of evidence. Even if Rule 104(a) is limited to the "preliminary requirements or conditions that must be proved before a particular rule of evidence may be applied," *United States v. Brewer*, 947 F.2d 404, 409 (9th Cir. 1991), that does not prevent the court from excluding illegitimate evidence when excluding such evidence is the very reason rules of evidence exist. I have no problem reaching the firm conclusion that illegitimate evidence may permissibly be held to be inadmissible due to its inaccurate nature. We should make that our precedential point, rather than the approach favored by the majority.

I illustrate with a thought experiment or hypothetical. Let's say that an organized-crime czar is charged in a serious case and wants to present "exculpatory" evidence. But the prosecution has independent evidence that the defense evidence is as phony as a $3 bill. It might be fraudulently obtained (such as the legitimate document here that was procured by fraudulent means). Or it might be the product of

extortion (such as through a threat like "I will kill your children if you don't give me an alibi"). Or it might be the product of bribery (such as a promise to pay a large sum for favorable evidence). In each case, the majority's rule would appear to require the phony evidence to be admitted before the jury, while merely letting the prosecution present responsive evidence to the jury showing that it was procured by fraud, extortion, or bribery. That would require mini-trials within the trial, would be potentially confusing to a jury, and is not literally required by Rule 104.

The majority agrees that the court can condition relevance on validity. But it concludes that in making "a preliminary determination whether the foundation evidence is sufficient to support a finding of fulfillment of the condition," Fed. R. Evid. 104(b) advisory committee's note, a court may not consider the underlying substance and process that led to the issuance of a document because doing so would amount to an improper credibility determination. Applying this rationale in the present case, the majority concludes that "the district court erroneously weighed the credibility of the government's witnesses against the credibility of the official state document." But the existence of the document does not at all bear on the question of whether it was procured by fraud. And the district court cannot be said to have made a credibility determination when Evans presented no evidence at the hearing to support the document's integrity. Adopting the rule of the majority permits a party's old lies to insulate new ones from challenge outside the jury's presence.

Here are the facts: To gain the delayed birth certificate, Evans offered an affidavit and testimony asserting that he was born in Idaho and was a former member of the U.S. Marine Corps. He said under oath that he was "active in the Vietnam

[W]ar, from 1969 through 1975" and had twelve years of combat duty where he earned a purple heart. He said that when he came back to the United States, he "donated [his] next eight years of service [in the Marine Corps] for free" until he retired. On this evidence, the Idaho judge granted the delayed birth certificate in the non-adversarial state proceeding and thanked Evans for his military service.

In the federal criminal proceeding, the district court excluded the Idaho birth certificate. It reached this correct decision after hearing extensive evidence that Evans was not a U.S. citizen and never served in the military, let alone in a war zone.[1] Based on this evidence and without any evidence presented by Evans, the court fairly concluded:

> While neither party questions the validity of
> the Idaho birth certificate on its face, the

---

[1] The official military historian testified that she could not verify Evans's service at all and "found nothing" even after searching casualty cards of those who were injured, the master locator containing the names of all marines, the pay entry base containing the dates that marines entered the service, and the lineal list for commissioned officers. She found no service number for Evans and stated that documents provided by Evans to support his claims of military service were not official documents and were instead "homemade" and "look like somebody made it for them—created it for themselves." Pictures of Evans in military uniform did not observe the dress code and the pictures reflected a rank of Staff Sergeant, even though Evans claimed to be an officer. The historian also stated that Evans could not have been "retired" from the Marine Corps because he did not allege a sufficient period of service for retirement. And finally, she said that Evans could not have served twelve years of active duty in Vietnam through 1975 because (1) "Marine Corps participation drew down and ended as a large scale operation" in 1971 and (2) the "[t]ypical tour for a Vietnam Marine was 13 months," so twelve years of service does not seem possible. Why should a judge require the jury to wade through all this?

Government has unequivocally shown that the Idaho birth certificate is substantively fraudulent and that it was obtained through fraud of the Defendant. The [c]ourt finds that all three of the Government's witnesses were credible and that there is no support in the record that would allow a reasonable person to determine that the Defendant's Idaho birth certificate is substantively genuine.

The majority argues that the court impermissibly made a credibility determination, but as I have explained, this principle should not be applied when all the evidence was on the Government's side and Evans had no witnesses testify at the evidentiary hearing. The district court's rationale quoted above is equivalent to saying that no reasonable jury could determine that the birth certificate was not tainted by fraud. I conclude that the district court made a correct and discerning judgment. There is nothing on the side of non-fraud here, and the district court's decision excluding the evidence was correct.

"Fraud" is "an instance or act of trickery or deceit esp[ecially] when involving misrepresentation." Webster's Third New International Dictionary 904 (3d ed. 1993). To tell a lie is to "make an untrue statement with an intent to deceive" or to "create a false or misleading impression." *Id.* at 1305. Lying is a form a fraud. And to determine whether fraud exists, substance and process must be examined. Under the majority rule, the district court could not perform such an examination and evidence procured by fraud would be admissible, leaving it to the jury to sort things out. To my thinking, there is no evidence error at all in excluding

fraudulently obtained evidence. I would conclude that Federal Rule of Evidence 104(a) lets the court preliminarily review whether a state document in the form of a belated birth certificate was procured by fraud. That is one reason to affirm the district court.

Second, even if Rule 104(a) should be limited as stated by the majority, Federal Rule of Evidence 403, relied upon by the district court in its Rule 104 decision, gives the district court broad power to exclude evidence if its probative value is substantially outweighed by a danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."[2] All the valid evidence presented to the state in the non-adversarial proceeding for the birth certificate could have been presented in Evans's criminal trial. I would have thought that introducing a fraudulent document would be wasting the jury's time and confusing the issues. It was reasonable for the district court to exclude the delayed birth certificate under Rule 403. *See Old Chief v. United States*, 519 U.S. 172, 184–85 (1997) (performing a Rule 403 analysis requires the court to consider the probative value and prejudice associated with the admission of evidence alongside the probative value and prejudice associated with similar evidentiary alternatives). And our case law confirms that excluding an evidentiary exhibit under Rule 403 is permissible where the relevance of the document is

---

[2] Unlike the majority, I read the district court's order as relying on Rule 104(a) and Rule 403 conjunctively instead of independently, in part because the district court characterized its own actions as being similar to when a court determines whether proffered scientific expert testimony or co-conspirator statements are admissible under the rules of evidence. Because of this, the majority's discussion of Rule 104(a) as if standing alone is unnecessary.

predicated on a disputed factual hypothesis. *Baker v. Delta Air Lines*, *Inc.*, 6 F.3d 632, 643 (9th Cir. 1993). The standard for abuse of discretion under *United States v. Hinkson*, 585 F.3d 1247 (9th Cir. 2009) (en banc), prevents us from reversing an evidence ruling if it is not "illogical, implausible, or without support in inferences that may be drawn from the facts in the record." *See United States v. Redlightning*, 624 F.3d 1090, 1110 (9th Cir. 2010) (citing *Hinkson*, 585 F.3d at 1261). Here, the district court's decision is logical and is supported by evidence that the certificate was gained by fraudulent documents and false testimony. Undue delay was likely to result from the certificate's admission. There was no abuse of discretion in applying Federal Rule of Evidence 403. That is a second reason to affirm the district court.

Third, even if the district court abused its broad discretion on evidence rulings despite the sound grounds for the fraudulent birth certificate's exclusion, I would not elevate this to the level of constitutional error and instead would conclude that any error was harmless.[3] *See United States v. Pridgen*, 518 F.3d 87, 91–92 (1st Cir. 2008) (stating the harmless-error standard). Evans cannot claim that exclusion of the delayed birth certificate blocked his defense because the court let him give testimony and offer valid documents

---

[3] The panel majority also should not have reached the question of whether the exclusion of the birth certificate violated Evans's right to present a defense under the Fifth Amendment because Evans did not brief that argument before the district court, and the court did not address that issue in the challenged order. *See Trigueros v. Adams*, 658 F.3d 983, 988 (9th Cir. 2011) ("Ordinarily, arguments not raised before the district court are waived on appeal.").

supporting his claim of citizenship. *See United States v. Stever*, 603 F.3d 747, 755–57 (9th Cir. 2010) (holding that there was constitutional error where "the sole evidence" on a major issue was erroneously excluded); *see also United States v. Pineda-Doval*, 614 F.3d 1019, 1032–33 (9th Cir. 2010) (holding that there was constitutional error where a total exclusion of evidence wholly "denied the defendant the only argument that he had"). The ruling, even if assumed to be incorrect, did not create fundamental unfairness and a resulting due-process violation in the criminal trial. *See United States v. Ramirez*, 714 F.3d 1134, 1139 (9th Cir. 2013) (holding that there was non-constitutional error). Because the error was not constitutional, reversal is improper so long as "it is more probable than not that the error did not materially affect the verdict." *See United States v. Wiggan*, 700 F.3d 1204, 1215 (9th Cir. 2012) (quoting *Boyd v. City & Cnty. of S.F.*, 576 F.3d 938, 949 (9th Cir. 2009)). Here Evans chose not to present much of the evidence offered in state court to obtain the delayed birth certificate. And the Government presented overwhelming evidence, including several finger-print matches and photographic matches to an active immigration file and testimony from Evans's sister identifying him as Roman Ceniceros-Mora who was born in Mexico. Evans's testimony also revealed that he had previously committed birth-certificate fraud, that he had physical injuries consistent with those of Ceniceros-Mora, and that he had previously signed statements using Ceniceros-Mora's name. The arresting officer also stated that after Evans was given his *Miranda* warnings, he admitted to having been deported before and said, "[T]ime will tell; I will be back; I will be back." The challenged ruling, if error, was

harmless on all the evidence.[4]  That is a third reason to affirm the district court.

Hence I respectfully dissent and would affirm the district court.

---

[4] Even if I assume there was constitutional error, I would conclude that it was harmless beyond a reasonable doubt under the standard of *Chapman v. California*, 386 U.S. 18, 23–24 (1967).