**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Donzell GOODWIN, Defendant–Appellant.**

**No. 94–10103.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 10, 1995.

Decided June 13, 1995.

purposes and would "disclose investigative techniques and procedures."

Dawn M. Lozano, Las Vegas, NV, for defendant-appellant.

Daniel R. Schiess, Asst. U.S. Atty., Las Vegas, NV, for plaintiff-appellee.

Before: SNEED, SCHROEDER, and TROTT, Circuit Judges.

TROTT, Circuit Judge:

Donzell Goodwin appeals his jury conviction and sentence for conspiracy to possess with intent to distribute and to distribute a controlled substance in violation of 21 U.S.C. § 846, and perjury before a grand jury in violation of 18 U.S.C. § 1623. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

### Background

Goodwin was arrested by Las Vegas police officers on August 26, 1992, after the officers discovered cocaine and a gun in Goodwin's hotel room. No charges were filed against Goodwin by the State of Nevada, and he was subsequently released from custody.

Following his release, Goodwin was subpoenaed to appear and testify before a federal grand jury. On September 2, 1992, Goodwin appeared before the grand jury and testified to the events relating to his August 26 arrest. The grand jury returned an indictment against Goodwin, and a jury subsequently convicted Goodwin of conspiracy to possess with intent to distribute and to distribute a controlled substance and perjury before the grand jury.

Goodwin contends his conviction for perjury before the grand jury must be reversed because his grand jury testimony was the product of coercion in violation of the Due Process Clause of the Fifth Amendment. Goodwin asserts three grounds in support of his position: 1) the failure of the Assistant United States Attorney ("AUSA") to adequately inform Goodwin of his rights immediately prior to testifying before the grand jury; 2) the failure of the AUSA to provide Goodwin with an "Advice of Rights" form in accordance with Justice Department policy; and 3) the failure of the AUSA to inform Goodwin he was a "target" or "subject" of the grand jury proceedings.

### Incomplete Warnings

Goodwin contends he was given incomplete warnings by the AUSA following

being sworn in before the grand jury. Specifically, Goodwin asserts that the AUSA never informed him of the general subject matter of the grand jury investigation or that his testimony could be used against him by the grand jury or in a future legal proceeding.

The transcript of Goodwin's grand jury testimony reveals that the AUSA gave Goodwin the following warnings:

"QUESTION: ... Mr. Goodwin, here in front of the grand jury you have certain rights and certain obligations that I'm going to take a minute and explain to you. First, Mr. Goodwin, you've just taken an oath to tell the truth; is that correct?

"ANSWER: Yes.

. . . .

"QUESTION: Now, Mr. Goodwin, as a witness before the grand jury, you do not have to answer a question if a truthful answer will tend to incriminate you. Do you understand that?

"ANSWER: Yes.

"QUESTION: Let me explain a little bit more what that means. It means that if a truthful answer will tend to show that you committed a crime—either it's an admission that you committed a crime or it's providing information that could lead up to other evidence which would show that you committed a crime. Do you understand that?

"ANSWER: Yes.

"QUESTION: Now, you don't have an attorney and you don't have the right to have an attorney sitting inside this grand jury room with you, but if you have an attorney and you want an attorney, you can speak with an attorney outside of the grand jury room, though you don't have a right to have one inside the room here. Do you understand that?

"ANSWER: Yes.

"QUESTION: Now, I'm going to ask you some questions, and if at any time you feel that a truthful answer would tend to incriminate you, you can indicate that you're not going to answer that question.

"ANSWER: Okay."

We must determine whether the AUSA's failure to explicitly warn Goodwin that any statements he made could be used to convict him of a crime constitutes a deprivation of due process. The Supreme Court's decision in *United States v. Washington,* 431 U.S. 181, 97 S.Ct. 1814, 52 L.Ed.2d 238 (1977), is instructive.

In *Washington,* the defendant was warned that he had the right to remain silent and any statements he made could be used to convict him of a crime. The Supreme Court concluded that "[t]his advice ... eliminated any possible compulsion to self-incrimination which might otherwise exist." *Washington,* 431 U.S. at 188, 97 S.Ct. at 1819. The Court found it "self-evident that one who is told he is free to refuse to answer questions is in a curious posture to later complain that his answers were compelled." *Id.*

In the instant case, Goodwin was expressly instructed that he had the right to refuse to answer any questions which might incriminate him. Indeed, the AUSA actually defined different types of information which might be incriminating. That Goodwin might have testified differently if he had received the additional warning that his statements could be used against him is doubtful.

The key to Goodwin's Fifth Amendment protection is that he not feel compelled to testify. The record reflects that Goodwin was more than adequately instructed that he was under no compulsion whatsoever to make any self-incriminating statements. To conclude Goodwin's testimony should have been suppressed because he was not told expressly that his statements could be used against him in court would place form over substance in the application of the Fifth Amendment. Therefore, we conclude the AUSA's verbal warnings to Goodwin prior to his grand jury testimony were sufficient to satisfy due process.

*"Advice of Rights Form"*

■ The internal policy of the United States Department of Justice is that witnesses called to testify before a grand jury who are also targets or subjects of the grand jury investigation should be informed of their

status as a target or subject and provided with a written "Advice of Rights" form. Specifically, the United States Attorney's Manual provides:

9–11.150 *Advice of "Rights" of Grand Jury Witnesses*

It is the Department's policy to advise a grand jury witness of the rights described below only if such witness is a "target" or "subject" . . . of a grand jury investigation.

. . . .

Notwithstanding the lack of clear constitutional imperative, it is the internal policy of the Department that an "Advice of Rights" form, as set forth below, be appended to all grand jury subpoenas to be served on any "target" or "subject" . . . of an investigation:

Advice of Rights

A. The grand jury is conducting an investigation of possible violations of federal criminal laws involving: (State here the general subject matter of inquiry . . . ).

B. You may refuse to answer any question if a truthful answer to the question would tend to incriminate you.

C. Anything that you do say may be used against you by the grand jury or in a subsequent legal proceeding.

D. If you have retained counsel, the grand jury will permit you a reasonable opportunity to step outside the grand jury room to consult with counsel if you do so desire.

United States Department of Justice, United States Attorney's Manual § 9–11.150 (1992 Supp.) (hereinafter "Manual").

The government concedes Goodwin was never provided an "Advice of Rights" form. In addition, although the government disputes whether Goodwin was a target of the investigation at the time he testified before the grand jury, the government concedes that "[a]t a minimum, [Goodwin] was a subject of the investigation and should have received the form."

■ Nevertheless, the failure of the AUSA to comply with internal department policy does not, without more, establish a

deprivation of Goodwin's constitutional rights. "[T]he U.S. Attorney's Manual 'is not intended to, does not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party in any matter civil or criminal.'" *United States v. Lorenzo,* 995 F.2d 1448, 1453 (9th Cir.1993) (quoting U.S. Attorney's Manual, § 1–1.100).

The Eighth Circuit addressed a similar challenge in *United States v. Long,* 977 F.2d 1264 (8th Cir.1992). Gerald Bell contended his grand jury testimony should have been suppressed because he did not receive an "Advice of Rights" form along with his grand jury subpoena as prescribed by the stated policy of the United States Attorney's Office. *Id.* at 1276. The Eighth Circuit held that because Bell was advised of his rights when he appeared before the grand jury and he affirmed before he testified that he understood those rights, his testimony was not the product of compulsion or coercion. *Id.* Therefore, whatever interest Bell had in receiving an "Advice of Rights" form prior to his appearance before the grand jury "[did] not rise to the level of a liberty protected by the Due Process Clause of the Fifth Amendment." *Id.*

We agree with the reasoning of the Eighth Circuit and hold that the failure to attach an "Advice of Rights" form to a grand jury subpoena, without more, does not constitute a lack of Due Process in violation of the Fifth Amendment.

*Target Status*

■ Lastly, Goodwin asserts that the AUSA's failure to inform Goodwin that he was a target of the investigation deprived him of due process. The United States Supreme Court already has rejected this argument.

In *United States v. Washington,* the Supreme Court held that the Fifth Amendment does not require that a grand jury witness be warned he is a potential target of the grand jury investigation. *Washington,* 431 U.S. at 189, 97 S.Ct. at 1819–20. The Supreme Court stated:

[W]e do not understand what constitutional disadvantage a failure to give potential de-

fendant warnings could possibly inflict on a grand jury witness, whether or not he has received other warnings. It is firmly settled that the prospect of being indicted does not entitle a witness to commit perjury, and witneses [sic] who are not grand jury targets are protected from compulsory self-incrimination to the same extent as those who are. Because target witness status neither enlarges nor diminishes the constitutional protection against compelled self-incrimination, potential defendant warnings add nothing of value to protection of Fifth Amendment rights.

*Id.*

Our determination that Goodwin was adequately informed of his rights prior to testifying before the grand jury leads us to conclude that the AUSA's failure to warn Goodwin that he was a potential target of the grand jury investigation did not deprive him of due process.

Because Goodwin's grand jury testimony was not the product of any constitutional violations, his claim that he was prejudiced by its admission into evidence during his subsequent criminal prosecution must fail.

AFFIRMED.[1]

---

1. Goodwin's appeal also raises issues of sufficiency of evidence, ineffective assistance counsel, and sentencing. We have duly considered each of these issues and conclude they are meritless without need for further discussion.