**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
      *Plaintiff-Appellee*,

v.

HEIDI HAISCHER,
      *Defendant-Appellant*.

No. 13-10392

D.C. No.
2:11-cr-00267-
MMD-CWH-2

OPINION

Appeal from the United States District Court
for the District of Nevada
Miranda Du, District Judge, Presiding

Argued and Submitted
August 14, 2014—San Francisco, California

Filed March 25, 2015

Before: A. Wallace Tashima, M. Margaret McKeown,
and Richard R. Clifton, Circuit Judges.

Opinion by Judge Clifton

# SUMMARY[*]

## Criminal Law

The panel vacated a judgment of conviction for committing and conspiring to commit wire fraud in connection with a scheme to secure mortgages by using false information in loan applications and supporting documents.

The panel held that the district court's decision to exclude, as highly prejudicial and possessing no probative value, evidence of the defendant's alleged abuse at the hands of her then-boyfriend (and alleged conspirator) Kelly Nunes, and to instruct the jury to disregard this evidence in its entirety, was error.

The panel held that evidence that the defendant's leg was broken and that Nunes required the defendant to sign the loan papers before she could be taken to the doctor to have it treated suggested that the defendant was under pressure to sign the documents, and that had this evidence been before the jury, a reasonable juror might have doubted whether the defendant had the requisite knowledge and intent to commit fraud. The panel wrote that the exclusion of the evidence of abuse was particularly problematic in light of the district court's "deliberate ignorance" instruction.

The panel took the opportunity to make clear that under federal law, a defendant is not obligated to admit her guilt to a crime as a precondition for raising an affirmative defense

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

such as duress. The panel wrote that the widely-accepted principle that a criminal defendant may assert inconsistent defenses should apply with equal force where a defendant seeks both to assert the defense that she acted under duress and to hold the government to its burden of proof on the issue of *mens rea*.

The panel concluded that the error was not harmless beyond a reasonable doubt, and remanded for further proceedings.

## COUNSEL

Franny Forsman, Las Vegas, Nevada, for Defendant-Appellant.

Mythili Raman, Denis J. McInerney, Thomas B.W. Hall, Brian R. Young, and John-Alex Romano (argued), United States Department of Justice, Washington, DC, for Plaintiff-Appellee.

## OPINION

CLIFTON, Circuit Judge:

Heidi Haischer appeals her jury trial conviction and sentence for committing and conspiring to commit wire fraud in violation of 18 U.S.C. § 1343 and 18 U.S.C. § 1349. We conclude that, under the circumstances of this case, the district court's decision to exclude all evidence of Haischer's alleged abuse at the hands of her then-boyfriend (and alleged co-conspirator), and to instruct the jury to disregard this

evidence in its entirety, was error. Because this erroneous evidentiary ruling violated Haischer's due process right to present a complete defense, and because the constitutional error was not harmless, we vacate the judgment of conviction and remand for further proceedings.

## I. Background

Haischer was indicted in 2011 on two counts: wire fraud, in violation of 18 U.S.C. § 1343; and conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349. The indictment alleged that Haischer participated in a scheme to secure mortgages on two properties in Nevada in 2006 and 2007 by using false information in loan applications and supporting documents. She pled not guilty and went to trial.

The evidence presented at trial included the following. In 2006, Haischer was working in Las Vegas as a loan officer at a mortgage brokerage firm. Haischer's boyfriend at the time, Kelly Nunes, was a senior loan officer at the same firm. In late 2006, Nunes approached Haischer about purchasing some properties as investments. Applications were submitted under Haischer's name to obtain loans of $540,000 and $135,000 for the purchase of a house located on Kantele Circle in Henderson, Nevada. These applications falsely stated that Haischer had a monthly income of $15,000, that she had a bank account balance of $15,000 at the time, and that the Kantele Circle property would be Haischer's primary residence. Shortly thereafter, additional applications were submitted under Haischer's name to obtain loans of $428,800 and $102,200 for the purchase of a second house, located on Elche Court in Las Vegas. This set of applications falsely stated that Haischer made $18,000 a month and that she had a bank account balance of $38,000. It also failed to disclose

that she owned the Kantele Circle property, despite the fact that the Kantele Circle transaction had closed a few days prior to the filing of the Elche Court applications. Lenders funded loans for both properties in January 2007. Haischer managed only a few payments on her loans before going into default, and the properties were eventually sold via foreclosure proceedings. The lenders incurred substantial losses.

In support of the applications, Nunes paid a third party $300 to supply false verifications regarding Haischer's employment. False bank account statements were also submitted along with the loan applications. Haischer testified that she did not submit these supporting documents, and that Nunes had access to her bank account statements. She further testified that Nunes filled out the loan applications for both properties, and that she deferred to his judgment because he was her boyfriend and her senior loan officer.

Haischer also alleged that Nunes had abused her. Prior to trial, the government moved *in limine* to exclude the evidence of abuse and to preclude the defense from asserting a duress defense. The district court denied the motion and concluded that Haischer had made a facial showing of duress after hearing testimony from Haischer's sister. She testified that she had witnessed Nunes yell at Haischer to sign some papers, which Haischer testified were for the Kantele Circle loan application. Haischer's sister further testified that Nunes did not allow Haischer to be taken to the doctor to treat a badly swollen leg until after Haischer signed the papers. X-rays taken later that day showed that Haischer's leg was broken in multiple places.

The jury was not permitted to consider any evidence of abuse, however. Haischer's trial counsel abandoned the

duress defense midway through the trial and instead asserted a *mens rea* defense—specifically, that Haischer lacked the necessary knowledge and intent to commit wire fraud. Following this change, the government sought to have evidence of Haischer's abuse excluded. The district court agreed and instructed defense counsel that he could not present evidence of abuse. Applying Federal Rule of Evidence 403, the district court reasoned that the evidence of abuse possessed no probative value and was "highly prejudicial." The court did permit Haischer to present evidence of "the dynamics of the relationship." As part of the instructions given to the jury prior to deliberation, though, the court told the jury "to disregard any testimony of alleged abuse" of Haischer by Nunes.

The jury was also given a "deliberate ignorance" instruction, over Haischer's objection. This is sometimes referred to as a *Jewell* instruction, after *United States v. Jewell*, 532 F.2d 697 (9th Cir. 1976) (en banc). Pursuant to the *Jewell* instruction, the jury was instructed that it may find that Haischer acted knowingly if she: "[1] was aware of a high probability that the information that she included in mortgage applications was false; and [2] deliberately avoided learning the truth." It was further instructed that it may not find such knowledge if she "actually believed that the information she included in the loan applications was truthful" or "was simply careless."

The jury convicted Haischer on both the conspiracy and wire fraud counts. Haischer filed a motion for a new trial on several grounds, including that the district court's exclusion of evidence of domestic violence had deprived her of a fair trial because the evidence was relevant to show her good faith

and lack of knowledge and intent to defraud. The district court denied the motion. This appeal followed.

## II. Discussion

Federal Rule of Evidence 403 provides that a district court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." "Unfair prejudice is an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one. The Rule requires that the probative value of the evidence be compared to the articulated reasons for exclusion and permits exclusion only if one or more of those reasons substantially outweigh the probative value." *United States v. Anderson*, 741 F.3d 938, 950 (9th Cir. 2013) (citations and internal quotation marks omitted).

We review the exclusion of evidence under Rule 403 for an abuse of discretion. *United States v. Garcia*, 729 F.3d 1171, 1175 (9th Cir. 2013). Where an evidentiary error has occurred in a criminal prosecution, we then review de novo whether the error "rises to the level of a constitutional violation." *United States v. Pineda–Doval*, 614 F.3d 1019, 1032 (9th Cir. 2010). If it does, we must reverse the conviction unless we conclude that the error was harmless beyond a reasonable doubt. *Id.* at 1033–34. Because Rule 403 "requires an on-the-spot balancing of probative value and [unfair] prejudice," *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 384 (2008) (internal quotation marks omitted), the "district court's Rule 403 determination is subject to great

deference," *United States v. Hinkson*, 585 F.3d 1247, 1267 (9th Cir. 2009) (en banc).

We are also mindful, however, that the exclusion of evidence offered by the defendant in a criminal prosecution under Rule 403 is "an extraordinary remedy to be used sparingly." *United States v. Mende*, 43 F.3d 1298, 1302 (9th Cir. 1995) (citation and internal quotation marks omitted). "[T]he danger of [unfair] prejudice must not merely outweigh the probative value of the evidence, but *substantially* outweigh it." *Id.* (emphasis in original). "[A]pplication of Rule 403 must be cautious and sparing" because the Rule's "major function is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." *United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000) (quoting *United States v. Mills*, 704 F.2d 1553, 1559 (11th Cir. 1983)).

The evidence that Haischer's leg was broken and that Nunes required Haischer to sign the loan papers before she could be taken to the doctor to have it treated suggested that Haischer was, at a minimum, under pressure to sign the documents. Had this evidence been before the jury, a reasonable juror might have doubted whether Haischer had the requisite knowledge and intent to commit fraud. Although the evidence of abuse was less probative of Haischer's lack of knowledge or intent than it was of Haischer's potential duress defense, the evidence was not so minimally probative that it was proper to exclude it entirely. The broken leg incident strongly supported one of Haischer's primary defenses, that she signed the documents without knowing what they said because of pressure from Nunes, such that she lacked the required knowledge and intent.

"Evidence is unfairly prejudicial if it makes a conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant *wholly apart from its judgment as to his guilt or innocence of the crime charged*." *United States v. Yazzie*, 59 F.3d 807, 811 (9th Cir. 1995) (emphasis in original) (internal quotation mark omitted). Probative evidence that incidentally happens to make a criminal defendant more sympathetic is not properly subject to exclusion under Rule 403.

The exclusion of the evidence of abuse in this case was particularly problematic in light of the "deliberate ignorance" instruction. Pursuant to this instruction, the jurors were told that they could find that Haischer knowingly committed fraud without actual subjective awareness if she: (1) was aware of a high probability that the information she included in mortgage loan applications was false; and (2) deliberately avoided learning the truth. The second prong of the *Jewell* instruction thus requires *deliberate* action, which we have defined as action that is "intentional," "premeditated," and "fully considered." *United States v. Heredia*, 483 F.3d 913, 920 (9th Cir. 2007) (en banc) (quoting BLACK'S LAW DICTIONARY 459 (8th ed. 2004)). "A decision influenced by coercion, exigent circumstances or lack of meaningful choice is, perforce, not deliberate," we have held, and thus "[a] defendant who fails to investigate for these reasons has not deliberately chosen to avoid learning the truth." *Id*. (footnote omitted).

"[D]omestic violence is not an isolated, individual event, but rather a pattern of perpetrator behaviors used against the victim." *Hernandez v. Ashcroft*, 345 F.3d 824, 837 (9th Cir. 2003) (quoting Anne L. Ganley, *Understanding Domestic*

*Violence*, *in* IMPROVING THE HEALTH CARE RESPONSE TO DOMESTIC VIOLENCE 18 (Carole Warshaw & Anne L. Ganley eds., 1996)).   The abusive relationship is defined by a "pattern of coercion and control," Evan Stark, *Re-Presenting Woman Battering: From Battered Woman Syndrome to Coercive Control*, 58 ALB. L. REV. 973, 975 (1995), such that it may even be said that "the unique profile of [the victim of domestic abuse] arises as much from the deprivation of liberty implied by coercion and control as it does from violence-induced trauma," *id*. at 986.   Mindful of the phenomena of "psychological abuse, coercive behavior, and the ensuing dynamics of power and control," *Hernandez*, 345 F.3d at 837, that inhere in the abusive relationship, we conclude that the evidence of abuse that Haischer sought to present at trial was sufficiently probative as to her knowledge and intent, or lack thereof.

That evidence was, in particular, probative of whether Haischer's supposed "deliberate ignorance" was in fact "influenced by coercion," and thus, under our case law, not deliberate at all.  *Heredia*, 483 F.3d at 920.  It was also probative of whether Haischer "lacked meaningful choice" with regard to reviewing the documents, when she would only be taken to treat a broken leg once she signed them.  *Id*. Had the evidence of abuse been admitted, a jury might have been more likely to determine that the second prong of the *Jewell* test was not satisfied.

Our concern is exacerbated by the broad language used by the district court in instructing the jury on what evidence it was to disregard.  The government argues that the probative value of the excluded evidence was slight in light of the testimony that was allowed concerning Haischer's relationship with Nunes and instances of verbal badgering

and intimidation by Nunes. In denying a post-trial motion the district court similarly noted that Haischer had been permitted to introduce evidence of the "coercive and manipulative relationship" she had with Nunes, including "specific instances of . . . Nunes' verbal abuse of Haischer." But after Haischer abandoned the duress defense, the district court ruled that evidence that previously had been admitted should be excluded, and it instructed the jury "to disregard *any* testimony of alleged abuse" of Haischer by Nunes. In light of the broad meaning of the term "abuse," this instruction could reasonably have led the jury to disregard the very evidence later cited by the government and the district court.

Defense counsel at trial might have abandoned the duress defense because he was under the mistaken impression that admitting to knowingly and intentionally committing the fraud was a precondition for raising the defense. We take this opportunity to make clear that under federal law, in contrast to the law of certain states, a defendant is not obligated to admit her guilt to a crime as a precondition for raising an affirmative defense such as duress. "It is well established that a defendant in a criminal prosecution may assert inconsistent defenses." *United States v. Demma*, 523 F.2d 981, 985 (9th Cir. 1975) (en banc) (footnote omitted). We see no reason why this widely accepted principle, *see Mathews v. United States*, 485 U.S. 58, 63–65 (1988), should not apply with equal force where a defendant seeks both to assert the defense that she acted under duress and to hold the government to its burden of proof on the issue of *mens rea* by contending that she did not commit the unlawful act with the required level of knowledge or intent.

Duress and the absence of the required *mens rea* are not the same thing. *See United States v. Meraz–Solomon*, 3 F.3d

298, 300 (9th Cir. 1993) (per curiam) ("[T]he prosecution must still establish beyond a reasonable doubt that [defendant] knew he was importing cocaine, even if his behavior might be excused by duress."). Similarly, the Supreme Court has stated that "the defense of duress does not negate a defendant's criminal state of mind when the applicable offense requires a defendant to have acted knowingly or willfully; instead, it allows the defendant to 'avoid liability . . . because coercive conditions or necessity negates a conclusion of guilt even though the necessary *mens rea* was present.'" *Dixon v. United States*, 548 U.S. 1, 7 (2006) (quoting *United States v. Bailey*, 444 U.S. 394, 402 (1980)) (alteration in original). This language stands for the proposition that knowledge is not categorically inconsistent with duress. It does not engraft a knowledge or other *mens rea* requirement onto the well-settled elements of the defense of duress. *See, e.g.*, *United States v. Vasquez–Landaver*, 527 F.3d 798, 802 (9th Cir. 2008) (stating elements of duress).[1]

Having concluded that an error occurred, we must conduct a de novo review to determine whether that error

---

[1] We recognize that a misreading of certain authorities might have encouraged a contrary conclusion. For example, a comment to the Ninth Circuit Model Instruction 6.5 ("Duress, Coercion or Compulsion (Legal Excuse)") provides that the instruction is to be used "when the defendant alleges that by virtue of duress, coercion or compulsion, the defendant knowingly or intentionally committed the criminal act." That might be read as implying that a defendant must admit knowledge or intent as a precondition to asserting a duress defense, but such an inference would not be consistent with our case law. *See McDowell v. Calderon*, 130 F.3d 833, 840 (9th Cir. 1997) (en banc), *overruled in part on other grounds by Weeks v. Angelone*, 528 U.S. 225 (2000) (wording of model instructions, "although extremely useful, is not blessed with any special precedential or binding authority").

"rises to the level of a constitutional violation." *Pineda–Doval*, 614 F.3d at 1032. "[T]he Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense. This right includes, at a minimum, . . . the right to put before a jury evidence that might influence the determination of guilt." *United States v. Stever*, 603 F.3d 747, 755 (9th Cir. 2010) (citations and internal quotation marks omitted). Thus, while it is axiomatic that "not every evidentiary error amounts to a constitutional violation," it nevertheless is "clear that the erroneous exclusion of important evidence will often rise to the level of a constitutional violation." *Id.* (citations omitted).

An evidentiary error violates a defendant's due process rights when it excludes: "(1) the main piece of evidence, (2) for the defendant's main defense, to (3) a critical element of the government's case." *United States v. Evans*, 728 F.3d 953, 967 (9th Cir. 2013). The evidence of abuse would have been central evidence in support of Haischer's *mens rea* defense, particularly in light of the deliberate ignorance theory as reflected in the *Jewell* instruction. Because Haischer's knowledge and intent were necessary elements of wire fraud, the evidence related to a critical element of the government's case. We conclude that the exclusion of the evidence violated Haischer's due process rights.

When a constitutional error has been committed, "we must reverse the guilty verdict unless the government convinces us the error was harmless beyond a reasonable doubt." *United States v. Leal–Del Carmen*, 697 F.3d 964, 975 (9th Cir. 2012). The government has not met this high burden.

**III.     Conclusion**

We vacate Haischer's conviction for wire fraud under 18 U.S.C. § 1343 and conspiracy under 18 U.S.C. § 1349, and remand for further proceedings, which may include a new trial.  Because we set aside the judgment of conviction, we do not reach the other issues that Haischer raised in this appeal.

**VACATED** and **REMANDED**.