
NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 14-50440 |
| | ) | |
| Plaintiff - Appellee, | ) | D.C. No. 2:13-cr-00819-PA-3 |
| | ) | |
| v. | ) | MEMORANDUM* |
| | ) | |
| GERARD SMITH, AKA Gerard Robert Smith, | ) | |
| | ) | |
| Defendant - Appellant. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | No. 14-50441 |
| | ) | |
| Plaintiff - Appellee, | ) | D.C. No. 2:13-cr-00819-PA-7 |
| | ) | |
| v. | ) | |
| | ) | |
| MARICELA LONG, | ) | |
| | ) | |
| Defendant - Appellant. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | No. 14-50442 |
| | ) | |
| Plaintiff - Appellee, | ) | D.C. No. 2:13-cr-00819-PA-1 |
| | ) | |
| v. | ) | |
| | ) | |
| GREGORY THOMPSON, | ) | |

*This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Defendant - Appellant.

UNITED STATES OF AMERICA,                    No. 14-50446

    Plaintiff - Appellee,                    D.C. No. 2:13-cr-00819-PA-4

    v.

MICKEY MANZO, AKA Mickey
Shane Manzo,

    Defendant - Appellant.

UNITED STATES OF AMERICA,                    No. 14-50449

    Plaintiff - Appellee,                    D.C. No. 2:13-cr-00819-PA-6

    v.

SCOTT CRAIG, AKA Scott
Alan Craig,

    Defendant - Appellant.

UNITED STATES OF AMERICA,                    No. 14-50455

    Plaintiff - Appellee,                    D.C. No. 2:13-cr-00819-PA-2

    v.

STEPHEN LEAVINS,

    Defendant - Appellant.

UNITED STATES OF AMERICA,                    No. 14-50583

<table>
<tr><td>Plaintiff - Appellee,</td><td>)</td><td>D.C. No. 2:13-cr-00819-PA-5</td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>v.</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>JAMES SEXTON,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>Defendant - Appellant.</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
</table>

Appeal from the United States District Court
for the Central District of California
Percy Anderson, District Judge, Presiding

Argued and Submitted July 5, 2016
Pasadena, California

Before: FERNANDEZ, CLIFTON, and FRIEDLAND, Circuit Judges.

Gerard Smith, Maricela Long, Gregory Thompson, Mickey Manzo, Scott Craig, Stephen Leavins (collectively, the "Joint Appellants"), and James Sexton each appeal their convictions for obstruction of justice and conspiracy to obstruct justice. *See* 18 U.S.C. §§ 371, 1503(a). Long and Craig also appeal their convictions for making false statements. *See id.* § 1001(a)(2). Craig and Leavins also appeal their sentences. The Joint Appellants and Sexton raise a number of issues.[1] We affirm.

_____

[1]In addition to the issues disposed of herein, they have raised several jury instruction issues. We have addressed those in an opinion filed on the same date as this memorandum disposition.

3

A) <u>Evidentiary rulings</u>

The Joint Appellants and Sexton challenge a number of evidentiary rulings in their respective trials; all of their challenges fail.

(1) <u>Challenges by the Joint Appellants</u>

First, the district court did not abuse its discretion[1] by excluding the testimony of Paul Yoshinaga, Chief Legal Advisor to the LASD, on the grounds that it was irrelevant and its probative value was outweighed by the risk of confusing the jury. *See* Fed. R. Evid. 401–403; *see also United States v. Haischer*, 780 F.3d 1277, 1281 (9th Cir. 2015). While the evidence was somewhat relevant,[2] it was minimally probative[3] and risked misleading the jury with Yoshinaga's legal opinions.[4] Moreover, any error in excluding the evidence was harmless[5] and did

---

[1]*United States v. Wiggan*, 700 F.3d 1204, 1210 (9th Cir. 2012); *see also United States v. Hinkson*, 585 F.3d 1247, 1263 (9th Cir. 2009) (en banc).

[2]*See United States v. Vallejo*, 237 F.3d 1008, 1015 (9th Cir.), *amended by* 246 F.3d 1150, 1150 (9th Cir. 2001); *Bisno v. United States*, 299 F.2d 711, 719 (9th Cir. 1961).

[3]*See Wiggan*, 700 F.3d at 1213.

[4]*See id.* at 1214 n.19.

[5]*See United States v. Moran*, 493 F.3d 1002, 1014 (9th Cir. 2007) (per curiam).

4

not constitute a constitutional violation[6] in light of the marginal relevance of the evidence and the jury instruction that the Joint Appellants could investigate potential violations of California law by federal agents. Also, there was no misconduct[7] in the prosecution's questioning of Leavins or its summary of his testimony in closing argument, regardless of whether Leavins's and Yoshinaga's recollections of their interactions may have differed to some extent.

Second, the district court did not abuse its discretion by excluding a video of an inmate breaking out of his jail cell and attacking another inmate. The video's minimal probative value was substantially outweighed by the time that would be wasted explaining the differences between the video and Brown's situation, including that the inmate victim was not held under 24-hour guard. *See United States v. Bussell*, 414 F.3d 1048, 1059 (9th Cir. 2005); Fed. R. Evid. 403.

Third, the district court did not abuse its discretion by permitting Deputies Michel and Courson to testify regarding certain incidents of inmate abuse. This limited evidence was properly admitted to rebut the implication that the federal investigation was unnecessary; it was not unfairly prejudicial because the jury was already aware of the abuse allegations and was given a limiting instruction. *See*

---

[6] *See Haischer*, 780 F.3d at 1284.

[7]*See United States v. Blueford*, 312 F.3d 962, 968, 974 (9th Cir. 2002).

5

*United States v. Hankey*, 203 F.3d 1160, 1172–73 & n.11 (9th Cir. 2000).

Fourth, the district court did not abuse its discretion by refusing to admit a video recording of a news interview with Sheriff Baca. The video was irrelevant[8] because none of the Joint Appellants had seen it, and their claim that certain witnesses relied on it is unsupported by the record. Moreover, the Joint Appellants were not prevented from properly presenting other evidence of Sheriff Baca's attitude and orders they may have received.

Fifth, because the Joint Appellants never sought to admit two exhibits[9] into evidence, the district court did not abuse its discretion by failing to admit them. No definitive ruling generally precluded evidence of Sheriff Baca's demeanor or attitude toward the FBI (in fact, other evidence on that topic was admitted) or rendered superfluous a request to admit the exhibits. *Cf. Dorn v. Burlington N. Santa Fe R.R. Co.*, 397 F.3d 1183, 1189 (9th Cir. 2005).

Sixth, the district court did not abuse its discretion by not allowing the Joint Appellants to cross examine Deputy Pearson about conversations he had after he learned of the writ for Brown on the ground that it was beyond the scope of the

---

[8] *See* Fed. R. Evid. 401, 402.

[9] A letter from Sheriff Baca to United States Attorney Andre Birotte and a memorandum summarizing an FBI interview with LASD Captain William Carey.

prosecution's direct examination.[10]  Moreover, any error was harmless[11] because Pearson admitted that his memory was impaired, and undermining the reliability of his recollection was the purpose of the Joint Appellants' questions.  Likewise, there was no Confrontation Clause violation because the Joint Appellants were allowed to explore the reliability of Pearson's memory and the question about his subsequent conversations was only marginally relevant.  *See Fowler v. Sacramento Cty. Sheriff's Dep't*, 421 F.3d 1027, 1036 (9th Cir. 2005); *see also* U.S. Const. amend. VI.

Seventh, the district court did not abuse its discretion by refusing to allow the Joint Appellants to renew their questioning of Deputy Martinez after they already had an opportunity for re-cross examination.  *See* Fed. R. Evid. 611(a); *see also United States v. Miller*, 688 F.2d 652, 660–61 (9th Cir. 1982).

Eighth, assuming, without deciding, that the Joint Appellants should have been permitted to ask AUSA Middleton leading questions as an adverse witness,[12]

---

[10]*See* Fed. R. Evid. 611(b).

[11]*See Moran*, 493 F.3d at 1014.

[12]*See* Fed. R. Evid. 611(c)(2); *United States v. Tsui*, 646 F.2d 365, 368 (9th Cir. 1981).

any error was harmless.[13]  The Joint Appellants do not claim that they were prejudiced by the district court's denial of Leavins's counsel's first request to lead Middleton on a question regarding Sheriff Baca.  Moreover, after Leavins's counsel's later renewed request was denied, he did not attempt to ask Middleton more questions.  Therefore, there was no prejudice from the denial of the renewed request to lead Middleton.  *See id.*

Ninth, the Joint Appellants have failed to preserve the rest of their evidentiary challenges for review by failing to explain how they constituted abuses of discretion or materially affected the verdicts.  *See Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994); *see also United States v. Williamson*, 439 F.3d 1125, 1138 (9th Cir. 2006).

Tenth, we reject the Joint Appellants' argument that the district court's errors cumulatively require reversal.  Most of its rulings were not erroneous, and as to the particular rulings that we have assumed were erroneous, but nevertheless harmless, we likewise conclude that their cumulative effect was harmless and not a constitutional violation.  *See United States v. Fernandez*, 388 F.3d 1199, 1256–57 (9th Cir. 2004), *modified*, 425 F.3d 1248, 1249 (9th Cir. 2005); *cf. United States v. Stever*, 603 F.3d 747, 757 (9th Cir. 2010).

---

[13]*See Moran*, 493 F.3d at 1014.

(2)     <u>Challenges by Craig, Long, and Leavins</u>

We likewise reject Craig, Long, and Leavins's argument that the district court abused its discretion by excluding evidence of ruses used by the FBI and LASD.[14]

First, the district court properly prevented the Joint Appellants from questioning FBI agents about their use of ruses on the grounds that it was irrelevant, would waste time, and would confuse the jury. *See* Fed. R. Evid. 401, 403. To the extent that evidence of FBI practices was marginally relevant to what the Joint Appellants could do or did, it was still properly excluded because that slight relevance was outweighed by its tendency to misdirect the jury toward the logical fallacy that if the FBI could sometimes use ruses, it was legitimate for LASD to do so here.

Second, the district court did not exclude all evidence regarding LASD's use of ruses; in fact, Craig testified about that topic. We see no abuse of discretion, under the circumstances, in the district court's sustaining objections to six individual questions about that topic asked of four witnesses. Even if there were error, because Craig and Long failed to explain the nature of the alleged errors in

---

[14]Because we determine that the district court did not err in excluding these categories of evidence, we also reject Leavins's claim that those purported errors support a finding of cumulative error. *See Fernandez*, 388 F.3d at 1256.

9

their opening brief, we would decline to reverse.  *See Greenwood*, 28 F.3d at 977.

### (3)    Limits on Craig's testimony

Craig claims that the district court violated his Sixth Amendment right to testify on his own behalf regarding his intent and the danger of cell phones in custodial settings,[15] but the court did not impose a per se bar to the admission of either type of evidence.[16]  With respect to intent, Craig was allowed to testify, although the district court appropriately refused to permit his attorney to use improper questions.  *See Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S. Ct. 1038, 1049, 35 L. Ed. 2d 297 (1973); *United States v. Gallagher*, 99 F.3d 329, 332 (9th Cir. 1996).  The rulings were not erroneous and did not constitute constitutional error, plain or otherwise.  *See Stever*, 603 F.3d at 755–56 & n.3; *see also* Fed. R. Crim. P. 52(b); *Henderson v. United States*, __ U.S. __, __, 133 S. Ct. 1121, 1126–27, 185 L. Ed. 2d 85 (2013).  With respect to the dangers of cell phones in the jail, the record does not support Craig's claim that he was precluded from offering that kind of evidence, through his testimony or otherwise.  And even if the court's ruling prevented him from testifying on that topic, it would not be a

---

[15]*See Rock v. Arkansas*, 483 U.S. 44, 52, 107 S. Ct. 2704, 2709, 97 L. Ed. 2d 37 (1987).

[16]*Cf. United States v. Pineda-Doval*, 614 F.3d 1019, 1032–33 (9th Cir. 2010).

constitutional violation. *See Stever*, 603 F.3d at 756. The excluded evidence was not extensive or broad, and was not the only evidence presented on the topic. *Cf. id.*; *Greene v. Lambert*, 288 F.3d 1081, 1091–92 (9th Cir. 2002).

(4)    Challenges by Sexton

First, we reject Sexton's claim that the district court erred by failing to suppress all of his grand jury testimony because the United States Attorney's Office purportedly violated its internal procedures by failing to warn him that he was a target of the investigation before he testified. As a factual matter, the district court's finding that the Government did not consider him to be a target at the time of his grand jury testimony is supported by the record. *See United States v. Todhunter*, 297 F.3d 886, 889 (9th Cir. 2002). Even assuming that he was a target at that time, there was no due process violation because Sexton was advised of his Fifth Amendment rights. *See United States v. Goodwin*, 57 F.3d 815, 818–19 (9th Cir. 1995); *see also United States v. Washington*, 431 U.S. 181, 189, 97 S. Ct. 1814, 1820, 52 L. Ed. 2d 238 (1977). We decline Sexton's request to exercise any supervisory authority we have to impose sanctions on the Government by suppressing his testimony. *See United States v. Wilson*, 614 F.2d 1224, 1227 (9th Cir. 1980); *see also United States v. Williams*, 504 U.S. 36, 46, 112 S. Ct. 1735, 1741, 118 L. Ed. 2d 352 (1992); *Goodwin*, 57 F.3d at 818.

11

Second, the district court did not abuse its discretion by denying Sexton's request to require the Government to introduce portions of his grand jury testimony in addition to those excerpts that the Government offered. *See* Fed. R. Evid. 106. Sexton never identified how the excerpts the Government sought to introduce were "misleadingly-tailored snippet[s]" taken out of context;[15] instead he claimed that the Government excerpts were misleading as a whole. Apparently that was because the Government excluded several somewhat-exculpatory statements. But those statements were inadmissible hearsay[16] and Rule 106 did not require their admission.[17]

Third, the district court did not abuse its discretion by prohibiting Sexton from eliciting testimony from FBI Agent Narro that he understood that the writ for Brown's testimony had been withdrawn.[18] Contrary to Sexton's claims, the

---

[15] *United States v. Collicott*, 92 F.3d 973, 983 (9th Cir. 1996); *see also United States v. Vallejos*, 742 F.3d 902, 905 (9th Cir. 2014).

[16] *See United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000); *cf. United States v. Swacker*, 628 F.2d 1250, 1253 & n.3 (9th Cir. 1980). We reject Sexton's conclusory statement in his reply brief that the statements were not hearsay pursuant to Federal Rule of Evidence 803(3). *Cf. United States v. Faust*, 850 F.2d 575, 585–86 (9th Cir. 1988).

[17] *Collicott*, 92 F.3d at 983

[18] In fact, AUSA Middleton had decided not to pursue execution of the writ at that time, but never sought to withdraw it or decided that LASD need not comply

(continued...)

12

evidence was not that the writ had, in fact, been withdrawn; instead, it was evidence that Narro had that understanding. Narro's impressions were irrelevant in the absence of evidence that they had been communicated to Sexton or others at LASD. And even assuming that Narro's understanding was some evidence that the writ had actually been withdrawn, that did not tend to show that the grand jury had no further interest in Brown. Moreover, the fact remains that Sexton's obstructive actions commenced before the so-called withdrawal. It was irrelevant whether the writ was withdrawn after Sexton had committed those acts. *See United States v. Rasheed*, 663 F.2d 843, 853 (9th Cir. 1981); *see also United States v. Aguilar*, 515 U.S. 593, 602, 115 S. Ct. 2357, 2363, 132 L. Ed. 2d 520 (1995); *United States v. Ladum*, 141 F.3d 1328, 1339 (9th Cir. 1998).

### B)    Insufficiency of the evidence

#### (1)    False statement convictions

Craig and Long claim that there was insufficient evidence to show that their respective statements to Agents Marx and Narro were material to the FBI as required for their false statement convictions. *See* 18 U.S.C. § 1001(a)(2).

---

[18](...continued)
with it.

13

Reviewing the evidence in the light most favorable to the verdict,[19] a rational juror could find that the statements could have affected the FBI's investigation for the grand jury[20] by intimidating Agent Marx and her colleagues. And although it was not required for the Government to prove this count, there was evidence that the statements had that intended effect because the FBI postponed returning to the jail to interview inmates and gather information as a result. The Government was not required to show that the statements caused the entire investigation for the grand jury to shut down. *See King*, 735 F.3d at 1108.

### (2)     Long's obstruction of justice conviction

Likewise, we reject Long's claim that the evidence was insufficient to prove that her actions were material to the grand jury investigation, as required for her obstruction of justice conviction. *See* 18 U.S.C. § 1503; *United States v. Thomas*, 612 F.3d 1107, 1129 (9th Cir. 2010). There was sufficient evidence that Long endeavored to obstruct justice through her efforts directed at the FBI agents and through her efforts to convince witnesses not to cooperate with the federal investigation. Those efforts would "have the natural and probable effect of

---

[19]*See United States v. Nevils*, 598 F.3d 1158, 1161 (9th Cir. 2010) (en banc).

[20]*See United States v. Stewart*, 420 F.3d 1007, 1019 (9th Cir. 2005); *United States v. King*, 735 F.3d 1098, 1107–08 (9th Cir. 2013).

interfering" with the grand jury investigation. *Aguilar*, 515 U.S. at 599, 115 S. Ct. at 2362 (internal quotation marks omitted) (quoting *United States v. Wood*, 6 F.3d 692, 695 (10th Cir. 1993)); *see also Thomas*, 612 F.3d at 1129. We therefore affirm her obstruction of justice conviction.

Long's argument is largely premised on her assertion that there was no evidence that she knew of the writ for Brown, or that she knew that Deputies Michel or Courson were potential grand jury witnesses. But there was sufficient circumstantial evidence from which the jury could rationally infer Long's knowledge. *See United States v. Bennett*, 621 F.3d 1131, 1139 (9th Cir. 2010); *see also Nevils*, 598 F.3d at 1161.

In light of those justifiable inferences, there was ample evidence from which the jury could also rationally infer that Long's actions would have the natural and probable effect of interfering with the grand jury investigation. In fact, the actions by her and others appear to have been successful because Brown ultimately assured Long and others that he would not testify for the FBI. Similarly, the jury could have inferred that Long's presence at, and statements she made during, the interviews of Deputies Courson and Michel were designed to pressure them not to cooperate with the federal investigation. We therefore reject Long's claim that there was insufficient evidence that her endeavors to obstruct justice were material

15

to the grand jury.[21]

> (3)    Long's conspiracy conviction

Long argues that the evidence was insufficient to sustain her conviction for conspiracy to obstruct justice. We disagree. *See United States v. Hart*, 963 F.2d 1278, 1282 (9th Cir. 1992); *see also United States v. Mincoff*, 574 F.3d 1186, 1198 (9th Cir. 2009); *United States v. Hernandez-Orellana*, 539 F.3d 994, 1007 (9th Cir. 2008).

There was a great deal of evidence that Long knowingly participated[22] in the conspiracy and acted to further its objectives.[23] For example, she went to the jail where Brown was hidden in order to interfere with the grand jury investigation by pressuring him. She was not merely physically present while her co-conspirators committed crimes,[24] but actively participated to further the conspiracy's obstructive

---

[21]Long has waived the argument that there was insufficient evidence the FBI was acting as an "arm of the grand jury" by raising it too late. *See United States v. Romm*, 455 F.3d 990, 997 (9th Cir. 2006). In any event, the evidence here was sufficient to establish that the FBI was operating on behalf of the grand jury. *See Hopper*, 177 F.3d at 830; *cf. Aguilar*, 515 U.S. at 600, 115 S. Ct. at 2362.

[22]*United States v. Esquivel-Ortega*, 484 F.3d 1221, 1228 (9th Cir. 2007); *see also United States v. Herrera-Gonzalez*, 263 F.3d 1092, 1095 (9th Cir. 2001); *United States v. Wright*, 215 F.3d 1020, 1028 (9th Cir. 2000).

[23]*United States v. Esparza*, 876 F.2d 1390, 1392 (9th Cir. 1989).

[24]*Cf. Herrera-Gonzalez*, 263 F.3d at 1095.

16

purposes.[25]  Even if she did not know precisely what each of her co-conspirators was doing, that does not undermine her connection to the conspiracy.  *See Herrera-Gonzalez*, 263 F.3d at 1095.

C)  Fair notice

The Joint Appellants and Sexton all claim that 18 U.S.C. § 1503(a) did not provide fair notice because it is vague, was novelly interpreted, and should have been interpreted in accordance with the rule of lenity.  *See United States v. Lanier*, 520 U.S. 259, 266, 117 S. Ct. 1219, 1225, 137 L. Ed. 2d 432 (1997); *Webster v. Woodford*, 369 F.3d 1062, 1069 (9th Cir. 2004); *see also Gollehon v. Mahoney*, 626 F.3d 1019, 1023 (9th Cir. 2010).  Appellants' arguments are largely premised on their assertion that they were prosecuted and convicted for innocuous conduct—investigating the FBI or following orders.  But they were prosecuted and convicted for obstructing a grand jury investigation; the fact that the jury did not believe their mens rea defenses "does not make the statute . . . constitutionally infirm."  *United States v. Lee*, 183 F.3d 1029, 1033 (9th Cir. 1999).

Cases addressing § 1503's potential vagueness in other factual

---

[25]*Cf. Esparza*, 876 F.2d at 1392–93.

17

circumstances[26] do not show that it is vague as applied to their conduct.[27] Nor was it novel to apply the obstruction statute to what they did: that is, to conduct intended to obstruct justice. We also reject their request to transplant the concept of qualified immunity from the civil to the criminal sphere. *See Lanier*, 520 U.S. at 270, 117 S. Ct. at 1227; *see also United States v. Gillock*, 445 U.S. 360, 372–73, 100 S. Ct. 1185, 1193, 63 L. Ed. 2d 454 (1980).[28] The obstruction statute provided the Joint Appellants and Sexton with ample fair notice that their obstructive conduct could give rise to criminal penalties.

D)    Dismissal of a juror

We reject the Joint Appellants' argument that the district court violated their Sixth Amendment rights by dismissing Juror Five after deliberations had begun. *See United States v. Christensen*, Nos. 08-50531 et al., 2015 WL 11120665, at *31–33 (9th Cir. July 8, 2016). The district court did not abuse its discretion[29] by

---

[26]*See, e.g., United States v. Bonds*, 784 F.3d 582, 584 (9th Cir. 2015) (en banc) (Kozinski, J., concurring).

[27]*See United States v. Jae Gab Kim*, 449 F.3d 933, 942 (9th Cir. 2006)

[28]Moreover, it was certainly clearly established that one could not intentionally obstruct justice. *See Aguilar*, 515 U.S. at 598–99, 115 S. Ct. at 2361–62.

[29]*United States v. Symington*, 195 F.3d 1080, 1085 (9th Cir. 1999).

18

dismissing the juror for good cause.[30]

The record supports the district court's decision to dismiss Juror Five, who revealed, over the course of three colloquies with the district court, that her emotional state[31] prevented her from being able to deliberate,[32] and the district court noted that her demeanor underscored the problems that are apparent in the written record. The district court therefore was not required to credit her ultimate (and somewhat grudging) statement that she could deliberate. *See Christensen*, 2015 WL 11120665, at *36–37; *see also Beard*, 161 F.3d at 1194. The Joint Appellants' speculation that the juror may have asked to be excused because of conflicts with other jurors is belied by the record; indeed, the juror flatly denied that her concerns had anything to do with the other jurors, and she never referred to her views of the case or the guilt or innocence of the Joint Appellants. *Cf. Symington*, 195 F.3d at 1084, 1088. The district court did not abuse its discretion in dismissing the juror on account of her inability to deliberate. *See Christensen*, 2015 WL 11120665, at *31.

---

[30]*Christensen*, 2015 WL 11120665, at *31; *see also* Fed. R. Crim. P. 23(b)(3).

[31]*United States v. Beard*, 161 F.3d 1190, 1193–94 (9th Cir. 1998)

[32]*Symington*, 195 F.3d at 1085

19

E)     Sentencing

The district court increased Craig's base offense level by three points because he was a manager or supervisor and increased Leavins's base offense level by four points because he was an organizer or leader. *See* USSG § 3B1.1(a)–(b) (2013);[33] *see also United States v. Whitney*, 673 F.3d 965, 975 (9th Cir. 2012). Craig and Leavins each argue that the district court procedurally erred by miscalculating their Sentencing Guidelines ranges. *See United States v. Carty*, 520 F.3d 984, 993 (9th Cir. 2008) (en banc); *see also Molina-Martinez v. United States*, __ U.S. __, __, 136 S. Ct. 1338, 1345–46, 194 L. Ed. 2d 444 (2016). The district court did not commit clear error when it applied the enhancements to Craig and Leavins. *See United States v. Rivera*, 527 F.3d 891, 908 (9th Cir. 2008); *United States v. Jordan*, 291 F.3d 1091, 1097 (9th Cir. 2002); *see also United States v. Rosas*, 615 F.3d 1058, 1066 (9th Cir. 2010).

There was sufficient evidence that Craig was a manager of criminal activity, not merely innocuous activity. *See* USSG § 3B1.1(b); *cf. Whitney*, 673 F.3d at 975. The enhancement was not merely based on Craig's role as an LASD supervisor, but on his role as a supervisor in the group committing the charged

---

[33]All references to the Sentencing Guidelines are to the Nov. 1, 2013, version.

offenses.  *See* USSG § 3B1.1, comment. (n.2).  He directed Long and other LASD personnel in interviewing Brown and other witnesses, he ordered the surveillance of FBI agents, and he advised Long as she lied to Agent Narro.  That Craig has a contrary view of the evidence does not warrant reversal of "the district court's . . . reasonable interpretation of the facts."  *See United States v. Awad*, 371 F.3d 583, 592 (9th Cir. 2004).  Moreover, the fact that Craig's behavior may not have qualified for the four-point enhancement does nothing to undermine the application of the three-point enhancement.  *See* USSG § 3B1.1, comment. (n.4).

We reject Leavins's argument about his sentence for similar reasons.  There was ample evidence showing Leavins's decision-making authority in the criminal conspiracy and justifying the application of the four-point enhancement.  His own grand jury testimony indicated that he made the decision to move Brown to another jail, and the district court was not required to credit his exculpatory explanation for why he did so.  *See Awad*, 371 F.3d at 592.  Leavins directed the actions of other conspirators, such as by telling Craig and Long to confront Agent Marx.  *Cf. Whitney*, 673 F.3d at 975.  Also, while not controlling, other conspirators did refer to him as their superior.  That Leavins may also have received orders from his own superiors does not undermine his leadership role for purposes of the enhancement. *See United States v. Barnes*, 993 F.2d 680, 685 (9th Cir. 1993); *see also* USSG

21

§3B1.1, comment. (n.4).  The district court did not clearly err by applying the four-point enhancement to Leavins's sentence.[34]

**AFFIRMED.**

---

[34]Because we affirm the convictions and sentences, we need not and do not consider the Joint Appellants' argument that these cases should be reassigned to a different district court judge on remand.